Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
12/08/2023 09:07 AM CST

In re Interest of Jessalina M.,
a child under 18 years of age.
State of Nebraska, appellee, v.
Samantha M., appellant.

___ N.W.2d ___

Filed December 8, 2023.    No. S-22-678.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Judgments: Statutes: Appeal and Error.** When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.
3. **Parental Rights.** "Out-of-home placement" for purposes of Neb. Rev. Stat. § 43-292(7) (Reissue 2016) focuses on the parent whose parental rights are at risk of being terminated. From that perspective, "out-of-home placement" includes any placement outside that parent's home, whether that is placement in foster care, with a guardian, or with anyone other than the parent at issue.
4. **Parental Rights: Time.** The existence of the statutory basis alleged under Neb. Rev. Stat. § 43-292(7) (Reissue 2016) should be determined as of the date the petition or motion to terminate is filed.

Petition for further review from the Court of Appeals, Riedmann, Bishop, and Arterburn, Judges, on appeal thereto from the County Court for Cheyenne County, Russell W. Harford, Judge. Judgment of Court of Appeals affirmed.

Gregory A. Rosen for appellant.

Amber Horn, Chief Deputy Cheyenne County Attorney, for appellee.

Audrey M. Long, guardian ad litem.

Heavican, C.J., Miller-Lerman, Cassel, Stacy, Funke, Papik, and Freudenberg, JJ.

Miller-Lerman, J.

## NATURE OF CASE

The county court for Cheyenne County, sitting as a juvenile court, terminated the parental rights of Samantha M. to her daughter, Jessalina M. Thereafter, Samantha appealed to the Nebraska Court of Appeals. The Court of Appeals affirmed the order, and we granted Samantha's petition for further review. Samantha generally claims that the Court of Appeals erred when it found under Neb. Rev. Stat. § 43-292(7) (Reissue 2016) that Jessalina had been in out-of-home placement for 15 or more months of the most recent 22 months, and she argues, in part, that the Court of Appeals specifically erred when it rendered its calculation based on the date the State filed its petition, rather than the date of trial. Based on somewhat different reasoning, we affirm the decision of the Court of Appeals that affirmed the order of the juvenile court that terminated Samantha's parental rights to Jessalina.

## STATEMENT OF FACTS

Samantha is the mother of Jessalina, who was born in September 2020. Jessalina's father is Jose M. Although Samantha and Jose were married at the time of Jessalina's birth, they have since divorced. Jessalina was removed from Samantha's care 2 days after she was born. That same day, the State filed a petition to adjudicate Jessalina as a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016). The removal was based on reports of hospital staff regarding Samantha's behavior and mental health issues. In addition, Samantha's parental rights to her son, Noah C., had been terminated in August 2019. See *In re Interest of Noah C.*, 306 Neb. 359, 945 N.W.2d 143 (2020) (affirming termination and describing Samantha's psychological issues). Jessalina

was ordered into the temporary custody of the Nebraska Department of Health and Human Services (DHHS), and she was placed into foster care.

Jose pled no contest to the allegations in the petition, and Jessalina was adjudicated as to Jose on October 13, 2020. The court thereafter adopted a case plan as to Jose and Jessalina. Samantha eventually also pled no contest to the allegations, and Jessalina was adjudicated as to Samantha on January 6, 2021. In February, the court adopted a case plan governing all parties.

Because Jessalina was born in North Platte, Nebraska, the original petition for adjudication was filed in the Lincoln County Court, sitting as a juvenile court. In June 2021, Jessalina's guardian ad litem filed a motion to transfer the case to the Cheyenne County Court, sitting as a juvenile court. The Lincoln County Court transferred the case to Cheyenne County over Samantha's objection.

On January 10, 2022, the court sustained Jose's motion requesting that Jessalina's placement be changed from the foster parents to being placed with him. The court's ruling was based in part on its finding that Jose had made significant progress on his case plan and had completed almost all his goals for reunification. The court noted that the State and Jessalina's guardian ad litem supported the change in placement. The court specified that custody of Jessalina would remain with DHHS and that DHHS could remove Jessalina from the placement without notice if it determined that she was in a situation that was dangerous or injurious to her.

On March 25, 2022, the State and Jessalina's guardian ad litem moved for termination of Samantha's parental rights to Jessalina. The petition alleged the following statutory bases for termination under § 43-292: subsection (2) (substantial and continuous or repeated neglect); subsection (3) (failure to provide necessary subsistence, education, or other care); subsection (5) (unable to discharge parental responsibilities because of mental illness or mental deficiency); subsection (6)

(failure of reasonable efforts to preserve and reunify family); and subsection (7) (out-of-home placement for 15 or more months of the most recent 22 months). As is evident in our analysis below, the focus of our opinion is necessarily on the meaning and application of § 43-292(7).

The termination hearing was held on July 20 and August 12 and 19, 2022. In an order filed on August 29, the juvenile court terminated Samantha's parental rights to Jessalina. The court found that all the alleged statutory bases for termination had been proved by clear and convincing evidence. Regarding the statutory basis under § 43-292(7), the court found that Jessalina had been "removed from Samantha's custody on September 10, 2020," and that "Jessalina still remained placed outside the home of Samantha on March 25, 2022," when the petition for termination was filed. The court found that even if Jessalina's placement with Jose ended a portion of the period of out-of-home placement, "Jessalina still had been in an out of home placement for 15 of the last 22 months." In addition to finding the existence of statutory bases for termination, the court found that Samantha was an unfit parent and that termination of her parental rights was in Jessalina's best interests.

Samantha appealed to the Court of Appeals. She claimed that the juvenile court erred when it (1) found that statutory grounds existed for termination of her parental rights and (2) found that she was unfit and that termination of her parental rights was in Jessalina's best interests. Samantha also claimed that the juvenile court in Lincoln County erred when it transferred the case to the court in Cheyenne County; however, Samantha does not seek further review of the Court of Appeals' affirmance of the transfer and therefore the issue is not discussed further herein. The Court of Appeals affirmed the juvenile court's order terminating Samantha's parental rights to Jessalina. *In re Interest of Jessalina M.*, 32 Neb. App. 98, 994 N.W.2d 106 (2023).

Regarding statutory grounds for termination, the Court of Appeals determined that there was clear and convincing

under § 43-292(7) that Jessalina had been in out-of-home placement for 15 or more months of the most recent 22 months. The Court of Appeals stated that because only one statutory basis was necessary, it need not review the evidence regarding other statutory bases. In its determination that the statutory basis under § 43-292(7) had been shown, the Court of Appeals recognized that "[§] 43-292(7) does not specifically provide a triggering event for when the 22-month look-back period should commence." *In re Interest of Jessalina M.*, 32 Neb. App. at 128, 994 N.W.2d at 124-25. In its analysis, the Court of Appeals contrasted the language of subsection (7) with that of subsection (1). The Court of Appeals noted that subsection (1) provides a basis for termination when the parent has abandoned the child "for six months or more immediately prior to the filing of the petition," whereas subsection (7) states that "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months," without specifying the date as of which that determination is to be made. See § 43-292.

The Court of Appeals concluded, as a matter of statutory interpretation, that the existence of the basis under subsection (7) should be determined as of the date the petition for termination is filed and that the look-back period under subsection (7) is the 22 months immediately preceding the filing of the petition. The Court of Appeals reasoned that this holding was consistent with related juvenile statutes, under which the facts supporting grounds for termination must be set forth in the petition or motion to terminate parental rights. The Court of Appeals provided a "See" cite to Neb. Rev. Stat. § 43-291 (Reissue 2016), which provides in part: "Facts may also be set forth in the original petition, a supplemental petition, or motion filed with the court alleging that grounds exist for the termination of parental rights." Based on this, the Court of Appeals reasoned that "the logical conclusion is that the filing of the petition, supplemental petition, or motion to terminate parental rights is the triggering event for the

22-month look-back period described in § 43-292(7)." *In re Interest of Jessalina M.*, 32 Neb. App. at 128, 994 N.W.2d at 125. The Court of Appeals also provided a "See" cite to Neb. Rev. Stat. § 43-292.02 (Cum. Supp. 2022), which provides, in part, that a "petition shall be filed on behalf of the state to terminate the parental rights of the juvenile's parents . . . if [a] juvenile has been in foster care under the responsibility of the state for fifteen or more months of the most recent twenty-two months."

In connection with its analysis, the Court of Appeals cited two cases in which this court "used the filing date of the petition when considering § 43-292(7)." *In re Interest of Jessalina M.*, 32 Neb. App. at 129, 994 N.W.2d at 125. These cases were *In re Interest of Nicole M.*, 287 Neb 685, 709, 844 N.W.2d 65, 83 (2014) (stating "the children have been out of the home since March 28, 2011. The State filed for termination on January 16, 2013. At that time, the children had been in out-of-home placement for over 21 months"), and *In re Interest of Shelby L.*, 270 Neb. 150, 156, 699 N.W.2d 392, 398 (2005) (stating child "had been in continuous out-of-home placement for 15 months and 12 days when the termination petition was filed on June 24, 2003").

Using March 25, 2022, the date the petition in this case was filed, as the "look-back" date, the Court of Appeals determined that the 22-month period ran from May 25, 2020, to March 25, 2022. The Court of Appeals noted that within that look-back period, Jessalina had been in out-of-home placement for 16 months—from September 10, 2020, when she was removed from Samantha's custody shortly after her birth, until January 10, 2022, when she was placed with Jose. The Court of Appeals assumed, without deciding, that the period when Jessalina was placed with her father, Jose, did not count as "out-of-home placement" for purposes of § 43-292(7).

Having determined that the statutory basis for termination existed under § 43-292(7), the Court of Appeals next considered the finding that termination was in Jessalina's

best interests. As part of this analysis, the Court of Appeals considered whether the State had shown that Samantha was an unfit parent. The Court of Appeals reviewed the evidence presented at the termination hearing, and it determined that the State had proved that Samantha was unfit. Further, it found clear and convincing evidence that it was in Jessalina's best interests to terminate Samantha's parental rights.

We granted Samantha's petition for further review.

## ASSIGNMENTS OF ERROR

Samantha claims that the Court of Appeals erroneously interpreted § 43-292(7) as setting the trigger date for the 22-month look-back period as the date the petition or motion for termination is filed. She also generally claims that the Court of Appeals erred when it affirmed the juvenile court's findings that Samantha was unfit and that termination was in Jessalina's best interests, and she specifically argues those findings were in error because they were based on the errone-ous determination that Jessalina was placed in out-of-home care for 15 or more months of the most recent 22 months under § 43-292(7).

## STANDARDS OF REVIEW

[1,2] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Manuel C. & Mateo S.*, 314 Neb. 91, 988 N.W.2d 520 (2023). When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Id.*

## ANALYSIS

On further review, Samantha contends that contrary to the conclusion reached by the Court of Appeals, the look-back period set forth in § 43-292(7) should be determined as of the date that parental rights are ordered terminated. Using that

date and presuming that placement with Jose was not "out-of-home placement" under § 43-292(7), Samantha asserts that Jessalina was not in out-of-home placement for 15 or more months of the 22 months preceding August 29, 2022, when the juvenile court filed the termination order. Samantha notes that Jessalina had been placed with Jose in January and that by August 29, she had been with Jose almost 8 months. Samantha argues that because Jessalina was not in out-of-home placement for the 8 months she was with Jose, Jessalina had not been in out-of-home placement for 15 or more months of the most recent 22 months that preceded the August 29 order. As explained below, we reject Samantha's analysis.

*"Out-of-Home Placement" Under § 43-292(7) Should Be
Considered From the Perspective of the Parent Whose
Parental Rights Are at Issue and May Include
Placement With Another Parent.*

Before addressing the Court of Appeals' determination of the trigger date under § 43-292(7), we note that the Court of Appeals assumed, without deciding, that Jessalina's placement with Jose was not "out-of-home placement" under § 43-292(7). We find it helpful to understand the meaning of "out-of-home placement" for purposes of § 43-292(7) before deciding whether the statutory basis under § 43-292(7) was shown to exist in this case. As set forth below, we determine that Jessalina's placement with her father, Jose, was "out-of-home placement" as to Samantha for purposes of § 43-292(7).

As we recognized in *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 1031, 814 N.W.2d 747, 760 (2012), "the Legislature has used the phrase 'out-of-home placement' in defining a statutory ground for termination of parental rights" under § 43-292(7), but "[t]hat phrase is not specifically defined in the Nebraska Juvenile Code." At issue in *In re Interest of Kendra M. et al.* was whether a guardianship was an "out-of-home placement" under § 43-292(7). We stated that in determining that issue, we would give the statutory language its plain and ordinary meaning.

The mother in *In re Interest of Kendra M. et al.* argued that the guardianship, which followed a period during which the children had been in foster care, should not be considered an "'out-of-home placement'" that could constitute grounds for terminating parental rights because "it was a temporary placement to which [the mother] agreed." 283 Neb. at 1031, 814 N.W.2d at 760. We rejected the mother's argument. We stated that the children had "been placed out of the parental home . . . , first in DHHS' custody [in foster care] and then in the custody" of the guardians, and we determined that "[t]here [was] no principled basis for concluding that the first was an 'out-of-home placement,' but the second was not." *Id.* at 1032, 814 N.W.2d at 760. With respect to the mother's agreement, we reasoned that the mother's "agreement to the appointment of [the guardians] did not change the nature of the placement, which was outside of *her* home." *Id.* (emphasis supplied).

With respect to the temporary nature of the placement, we reasoned in *In re Interest of Kendra M. et al.* that the mother's characterization of the guardianship as being of a "temporary nature" did not affect whether it was an out-of-home placement. We noted that in juvenile cases, "any form of out-of-home placement is originally intended as a temporary step toward reunification of the family." *Id.* But, we noted, "when reunification has not occurred after the passage of time determined by the Legislature, the child's need for permanency may necessitate other measures, up to and including termination of parental rights." *Id.* We reasoned that the Legislature's choice of "[t]he placement of a child outside the home for 15 or more months of the most recent 22 months under § 43-292(7) merely provides a guideline for what would be a reasonable time for parents to rehabilitate themselves to a minimum level of fitness." *In re Interest of Kendra M. et al.*, 283 Neb. at 1032, 814 N.W.2d at 761.

We recognized in *In re Interest of Kendra M. et al.* that the Legislature's choice of 15 or more months of the most recent 22 months was not conclusive of the issue of termination and

permits the court to focus on the specific parent at issue and that parent's efforts to rehabilitate himself or herself during that period up until trial. The Legislature chose placement outside the parent's home as a measure of whether the parent has progressed in rehabilitating himself or herself, and it determined that placement outside the parent's home for more than 15 or more months of the most recent 22 months indicated inadequate progress.

[3] Based on our reasoning in *In re Interest of Kendra M. et al.*, we determine that "out-of-home placement" for purposes of § 43-292(7) focuses on the parent whose parental rights are at risk of being terminated. From that perspective, "out-of-home placement" includes any placement outside that parent's home, whether that is placement in foster care, with a guardian, or with anyone other than the parent at issue.

Applying this understanding to the instant case, we determine that for purposes of § 43-292(7), Jessalina was in "out-of-home placement" as to Samantha during any time that she was not placed with Samantha, including the time that she was still under the custody of DHHS and was placed with Jose. Consistent with our reasoning in *In re Interest of Kendra M. et al.*, we see no principled reason to distinguish placement with another parent from foster care or a guardianship for purposes of "out-of-home placement" under § 43-292(7). The focus of § 43-292(7) is on the parent whose rights are at issue and whether that parent has made progress in rehabilitating himself or herself, and we therefore conclude that a placement outside that parent's home, even if with another parent, is an "out-of-home placement" under § 43-292(7).

*Existence of the Statutory Basis of 15 or More Months of the Most Recent 22 Months Under § 43-292(7) Should Be Determined as of the Date the Petition or Motion to Terminate Parental Rights Is Filed.*

With this understanding of "out-of-home placement" for purposes of § 43-292(7), the record in this case shows that

Jessalina was in "out-of-home placement" as to Samantha since September 2020, including both the period when she was in foster care and the period when she was placed with Jose. Therefore, in this particular case, the record shows that Jessalina was in "out-of-home placement" as to Samantha for 15 or more months of the most recent 22 months, whether that is determined at the time the petition was filed in March 2022, at the time of the trial in July and August 2022, or at the time the termination order was filed in August 2022. Nevertheless, for completeness and clarification, we agree with the Court of Appeals' conclusion that the statutory ground under § 43-292(7) should be measured as of the date a petition or motion to terminate parental rights is filed.

[4] As the Court of Appeals noted, § 43-292(7) does not specify the look-back date from which it must be shown that the child had been in out-of-home placement for 15 or more months of the most recent 22 months. However, we agree with the Court of Appeals' reasoning that determining the existence of § 43-292(7) as of the date of the petition or motion for termination is sensible and consistent with related statutes, such as § 43-292(1), which explicitly provides that the 6-month period of abandonment is "immediately prior to the filing of the petition"; § 43-291, which provides that facts alleging that grounds exist for termination of parental rights are to be set forth in the petition or motion; and § 43-292.02, which requires the State to file a petition to terminate parental rights when the child "has been in foster care under the responsibility of the state for fifteen or more months of the most recent twenty-two months." Moreover, because the State or other party filing a petition or motion for termination of parental rights must allege facts supporting the existence of the statutory basis on which it relies, the allegations must be based on facts existing at that time. It logically follows that the existence of the statutory basis alleged under § 43-292(7) should be determined as of the date the petition or motion to terminate is filed.

Samantha makes various arguments that the trigger date for determining the existence of the grounds under § 43-292(7) should be the date of the termination order or the time of trial, rather than the date the petition or motion is filed. She argues, in part, that when making a termination decision, the court should focus more on circumstances as they exist at the time the court makes its decision, rather than at the time the petition was filed. She argues that with respect to § 43-292(7), the child's placement during the time immediately preceding the termination decision should carry more weight than placement when the motion or petition was filed. Samantha argues that determining the existence of the statutory basis as of the date the petition or motion is filed would discourage parents from attempting to improve conditions after a petition to terminate has been filed because termination could be based solely on conditions that existed prior to the filing of the petition or motion. We reject this argument.

In *In re Interest of Kendra M. et al.*, 283 Neb. 1014, 1032, 814 N.W.2d 747, 760-61 (2012), we emphasized that the finding of statutory grounds for termination under § 43-292(7) did not end the termination inquiry and stated that "parental rights cannot be terminated solely based on the duration of the out-of-home placement, because it must also be shown that the parent is unfit and that termination is in the best interests of the child." We further noted that the "fact that a child has been placed outside the home for 15 or more months of the most recent 22 months does not demonstrate parental unfitness." *In re Interest of Kendra M. et al.*, 283 Neb. at 1032, 814 N.W.2d at 761.

Contrary to Samantha's assertions, parental rights cannot be terminated based solely on a mathematical determination of out-of-home placement for 15 or more months of the most recent 22 months prior to the filing of the petition or motion to terminate. Instead, the court must make additional findings of parental unfitness and best interests, and those findings will necessarily be based on evidence presented at

the trial and may include circumstances as they exist at the time of trial, including any efforts the parent has made since the petition or motion to terminate parental rights was filed. The statutory basis is only the first step in the analysis, and if conditions have changed since the time the petition was filed to the time of the hearing, the court is advised to factor those changes into its determination of fitness of the parent and the best interests of the child.

*Court of Appeals Did Not Err When It*
*Affirmed the Juvenile Court's Findings*
*Regarding Fitness and Best Interests.*

Samantha finally claims that the Court of Appeals erred when it affirmed the juvenile court's findings regarding her unfitness and the best interests of Jessalina. Samantha's argument on further review focuses on the allegedly erroneous determination that there was a statutory basis for termination under § 43-292(7). She argues that because the finding of the statutory basis was erroneous, the findings of unfitness and best interests were also erroneous.

Contrary to Samantha's assertions, as discussed above, the finding of the statutory basis under § 43-292(7) was not erroneous. But more importantly, the Court of Appeals did not affirm the findings of unfitness and best interests based solely on the existence of the mathematical statutory basis. Samantha's argument ignores the fact that the Court of Appeals separately reviewed the findings of unfitness and best interests and it found sufficient evidence not repeated here, in addition to the finding under § 43-292(7) of out-of-home placement for 15 or more months of the most recent 22 months, that supported those additional determinations. We see no error in those findings or in the Court of Appeals' review of the findings, and we reject Samantha's argument on further review.

## CONCLUSION

We conclude that "out-of-home placement" as used under § 43-292(7) is to be considered from the perspective of the

parent whose parental rights are at issue and that therefore, "out-of-home placement" includes placement with anyone other than the parent at issue, including with another parent. We further conclude that the look-back period to determine the existence of the statutory basis under § 43-292(7) of 15 or more months of the most recent 22 months is to be determined as of the date the petition or motion for termination of parental rights is filed and that any change in placement after the filing of the petition or motion is to be considered as part of the analysis of parental fitness and the best interests of the child. Based on these conclusions, we determine that the juvenile court did not err when it found that the statutory basis under § 43-292(7) was shown in the case, and we further determine that the juvenile court did not err when it found that Samantha was unfit and that termination of Samantha's parental rights was in Jessalina's best interests. We therefore affirm the decision of the Court of Appeals that affirmed the termination of Samantha's parental rights to Jessalina.

AFFIRMED.