IN THE NEBRASKA COURT OF APPEALS

## MEMORANDUM OPINION AND JUDGMENT ON APPEAL
### (Memorandum Web Opinion)

IN RE INTEREST OF OLIVIA G. & SOFIA G.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF OLIVIA G. AND SOFIA G., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

ASHLEY B., APPELLANT.

Filed July 23, 2024.    Nos. A-23-759, A-23-760.

Appeals from the County Court for Buffalo County: JOHN P. RADEMACHER, Judge. Affirmed.

Coy T. Clark, of Jacobsen, Orr, Lindstrom & Holbrook, P.C., L.L.O., for appellant.

Mandi J. Amy, Deputy Buffalo County Attorney, and Jasen J. Rudolph, guardian ad litem, for appellee.

PIRTLE, Chief Judge, and ARTERBURN and WELCH, Judges.

PIRTLE, Chief Judge.

### INTRODUCTION

Ashley B. appeals two orders of the county court for Buffalo County, sitting as a separate juvenile court, terminating her parental rights to her daughters, Olivia G. and Sofia G. Upon our de novo review, we find clear and convincing evidence that termination is proper under Neb. Rev. Stat. § 43-292(7) (Reissue 2016) and that termination of Ashley's parental rights is in the best interest of Olivia and Sofia. We therefore affirm the juvenile court's orders.

### BACKGROUND

On October 15, 2021, the State filed separate petitions alleging Olivia, born March 2008, and Sofia, born August 2009, came within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue

- 1 -

2016) in that "[s]aid child or a sibling was observed with injuries from excessive discipline occurring in the home, placing said child at risk for harm." The petitions were filed following a Department of Health and Human Services (DHHS) child abuse/neglect intake, alleging Olivia and Sofia had been struck with a belt by their maternal grandfather and that Ashley had been present and reportedly laughed about the incident. The children were removed from Ashley's home on October 14. Ashley has five other minor children who were not removed from Ashley's care and are not at issue in this case.

On November 9, 2021, the court entered separate orders adjudicating Olivia and Sofia under § 43-247(3)(a). Multiple case plans were implemented thereafter and Ashley was offered numerous services.

On May 31, 2023, the State filed separate motions for termination of Ashley's parental rights to Olivia and Sofia, alleging grounds for termination existed pursuant to § 43-292(1), (2), (6), and (7) and that termination was in the children's best interests. The two cases have been consolidated on appeal.

At the termination trial on both motions for termination, three child and family services specialists testified. Olivia Prentice worked with Ashley, Olivia, and Sofia from November 2021 to July 2022. She testified that prior to Olivia and Sofia being removed from the home due to physical discipline by Ashley's father, the family had been involved with DHHS because of domestic violence in the home. DHHS offered non-court services at that time.

Prentice stated that after Olivia and Sofia were removed from Ashley's home in October 2021, they were placed back in the home in March 2022 because their foster home could not meet their needs and there were no other foster homes that would take them at that time. DHHS' plan was to offer intensive in-home services to support placement in the home, and Ashley agreed to services in her home. However, during the time the girls were back in the home Ashley was not compliant with services. For example, two intensive family preservation referrals were made and Ashley did not follow through either time. The family preservation service was discontinued due to Ashley canceling or missing too many sessions.

Olivia and Sofia were removed again on May 25, 2022. Prentice testified their removal was due to some of the same concerns that existed at the time of the initial removal--physical discipline by Ashley, belittling comments, and arguments. There were also concerns about Ashley meeting Olivia and Sofia's basic needs. Prentice testified it was not safe physically and emotionally for the girls to be in the home; both girls had mental health concerns. Olivia and Sofia have remained out of the home since May 2022. The rest of the time Prentice was assigned to the case, Ashley did not have any parenting time with the girls.

Prentice testified that Ashley's cooperation with services was inconsistent. There were times she would start a service but then would not follow through with the service. Ashley did not participate in individual therapy, which DHHS had requested. She also only attended one or two sessions of the parenting course she had been ordered to complete. Toward the end of Prentice's time assigned to the case, Ashley became aware of a warrant for her arrest and stopped participating in services at that point. Prentice testified Ashley made "very little progress" toward the goals set by DHHS.

Rachel Carpenter took over for Prentice as the child and family services specialist in July 2022 and continued in that role until February 2023. When Carpenter took over the case, Ashley

told her that she had stopped participating in all services because she feared being arrested on an outstanding warrant. Ashley eventually turned herself in, at which time Carpenter tried to get her to participate in services but Ashley was uncooperative.

Carpenter set up sibling visitation between Olivia and Sofia and their five younger siblings. Ashley was not included in the sibling visits because she was not attending parent therapy with the girls' therapists as directed and she had not met any of the case plan goals that were required before she could have contact with the girls. Ashley was also supposed to be attending parenting classes. She attended one or two classes but did not complete the course.

Carpenter testified she discussed the case plan and goals with Ashley on multiple occasions but Ashley did not meet any of her goals. She made minimal progress in that she would make attempts to meet goals but would not follow through. She always had an excuse as to why she did not follow through, such as no childcare, she was sick, the girls' therapists are not working with her, and lack of transportation. She never saw an individual therapist. She was not providing any support for the girls. Ashley told Carpenter her unwillingness to work with DHHS was a result of her feeling that the case workers were trying to "set her up" and take her other children away.

At some point, Ashley began discussing with Carpenter her plan to relocate out of state. Carpenter told her how difficult it would be to reunify with Olivia and Sofia if she moved out of state. Ashley moved to Sandwich, Illinois, in December 2022, along with her five youngest children. This is where Keith C., her boyfriend and father of three of her younger children, was living. Keith was the perpetrator of domestic violence against Ashley that resulted in non-court services being offered before the present case was filed. When Ashley moved to Illinois, she did not have employment lined up and did not have her own place to live. Ashley's move also ended the visits between Olivia and Sofia and their siblings.

Carpenter testified that only one visit occurred between Ashley and the girls during the time she was assigned to the case. In January or February 2023, Ashley came to court for a probation hearing and DHHS made arrangements for a brief visit.

Anely Jimenez became the child and family services specialist for the family in March 2023 and was still in this role at the time of trial. She testified that based on her review of notes from prior case workers, Olivia and Sofia had shown great improvement in their behavior and the problems they were having when first removed from the home. Their behavior at school had improved and they were excelling academically. Olivia was on probation from an assault charge in 2020 and was doing well in complying with the requirements.

Jimenez testified that when she first got the case, she had a hard time contacting Ashley initially. Once she was able to contact her, she told Ashley that services were still available. She offered to locate parenting classes in Illinois but Ashley declined and stated she would find classes herself. Jimenez noted that DHHS had previously offered parenting classes to Ashley at least four times. Ashley later told Jimenez she had completed a parenting class but had not provided any proof to Jimenez as she had requested.

Jimenez also reminded Ashley of the monthly team meetings and sent her an email link so she could participate. Ashley only participated in two or three of the meetings. Jimenez also testified that Ashley had not indicated to her that she was participating in individual counseling. Jimenez stated Ashley had not completed any of the goals of the case plan, and she gets defensive

and verbally aggressive when asked about her progress. Jimenez also testified that Ashley had not taken any responsibility for the reasons Olivia and Sofia were removed from the home.

Other than the brief visit set up by DHHS in January or February 2023 when Ashley came for court, the last parenting time Ashley participated in was in February 2022. Ashley has not provided anything for the girls during Jimenez's time assigned to the case. At the time of trial, there was another warrant for Ashley's arrest in Nebraska.

Jimenez testified that in her opinion it would be in Olivia and Sofia's best interests to terminate Ashley's parental rights. Her opinion was based on her training and knowledge of the case, as well as conversations with the girls' therapists. She testified that if the girls were returned to Ashley, she would be concerned because Ashley had not completed any of her case plan goals, some of which focused on learning appropriate discipline for the girls, and she had not kept in communication with Jimenez.

Throughout the course of the case, Olivia and Sofia have been receiving individual therapy. Briana Woodside began treating Olivia in December 2021, when she was 13 years old. When Woodside began working with Olivia, she was diagnosed with "major depressive disorder, recurrent episode severe." Over time, Woodside provided a secondary diagnosis of "ADHD [attention deficit hyperactivity disorder], predominantly inattentive presentation, and other specified anxiety disorder." Woodside's diagnosis was based on Olivia demonstrating a high level of trauma-related symptoms, which included self-harm and suicidal ideation. Specifically, she had engaged in cutting herself. Olivia also had difficulty with age-typical tasks, especially attending school all day. Woodside testified that Olivia has had a history of developmental trauma, including observing domestic violence between her mother and stepfather, disruptive attachments from caregivers, difficulty with individuals being physically and emotionally safe, and sexual assault by a family member.

Woodside introduced herself to Ashley at a team meeting in December 2021 and explained that sessions between her and Ashley would be part of Olivia's therapeutic process. She set up a parent only telehealth call with Ashley for later in December. Ashley did not show up for the telehealth session, as well as the next scheduled telehealth session. She further did not show up for an in-person session scheduled for February 1, 2022. The first time Woodside met with Ashley was on a March 8, 2022, telehealth call, which occurred during the time the girls had been placed back in the home. She had two other telehealth calls with her between March 8 and April 28. In May 2022, Woodside and Sofia's therapist recommended Ashley's visits with the girls be suspended until she consistently attended weekly parent sessions and engaged in her own individual therapy.

Woodside was not in favor of Olivia returning home in March 2022. She testified that during the time Olivia was back in Ashley's care, she regressed in the progress she had made. Woodside testified that if Olivia was returned to Ashley's care, Olivia would most likely regress again because it is difficult for any child to maintain progress when the parent has not made "shifts in their own habituated patterns."

Woodside stated that during the time she has worked with Olivia, she has shown "immense progress." Olivia was demonstrating less trauma symptoms, including no longer self-harming, and reduced isolating patterns. Olivia had also made progress in her emotional well-being and safety concerns.

She further testified Olivia needs permanency soon to support her development. If she were to remain in limbo, it could negatively affect her development and her emotional stability. Woodside testified Olivia needs caregivers who can offer consistency with physical and emotional safety, be aware of her mental health risks, be able to consistently offer therapeutic parenting, and understand her likely need for mental health therapy throughout her life.

Jessica Schlegelmilch has been Sofia's therapist since December 2021, when Sofia was 10 years old. Sofia's initial diagnosis was "other reactions to severe stress and generalized anxiety disorder." She struggled with food insecurity, disrupted sleep patterns, limited emotional development, aggression toward adults and students at school, was easily irritable, and had low self-esteem.

Schlegelmilch also used parent only sessions as part of Sofia's therapeutic process. Her first parent session with Ashley was March 16, 2022, and her last session was April 21, 2022. Other sessions were scheduled but Ashley either canceled or was a "no show." At the time of the April 2022 session, Ashley claimed she was trying to get her own individual therapy scheduled.

Schlegelmilch did not approve of Sofia being returned to Ashley's care in March 2022. During the few months Sofia was back in the home, she reported that it was difficult to sleep at night because Ashley would engage in unsafe behaviors and wake up Olivia and her. Specifically, Sofia reported that Ashley would drink alcohol and then yell and use demeaning language toward her, and it seemed like nothing she did was good enough. Sofia also reported she had trouble sleeping because she was concerned about Ashley's erratic behavior and how it would impact her younger siblings. She told Schlegelmilch that Ashley's care of all the children was sporadic and there were no regular meal times.

Schlegelmilch testified that if Sofia was returned to Ashley's care, she would be concerned that Sofia would regress in her functioning. She testified that Sofia needs caregivers who can offer her predictable and consistent attunement to her physical and emotional needs through their ability to understand how developmental trauma has impacted her. She needs to be nurtured but also needs firm and consistent boundaries. Schlegelmilch stated it is in Sofia's best interests to achieve permanency soon.

Following trial, the juvenile court terminated Ashley's parental rights to Olivia and Sofia. It found that the State failed to prove § 43-292(1) by clear and convincing evidence but proved § 43-292(2), (6), and (7). It further found that termination was in Olivia and Sofia's best interests.

## ASSIGNMENTS OF ERROR

Restated, Ashley assigns that the juvenile court erred in (1) finding she was unfit, (2) finding that terminating her parental rights was in Olivia and Sofia's best interests, and (3) terminating her parental rights.

## STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Gabriel B.*, 31 Neb. App. 21, 976 N.W.2d 206 (2022). When the evidence is in conflict, however, an appellate court may give weight to the fact that the juvenile court observed the witnesses and accepted one version of facts over another. *Id.*

ANALYSIS

*Statutory Grounds.*

In the present case, the State sought termination of Ashley's parental rights under § 43-292(1), (2), (6), and (7). The juvenile court found the State proved § 43-292(2), (6), and (7) by clear and convincing evidence.

For a juvenile court to terminate parental rights under § 43-292, it must find that one or more of the statutory grounds listed in this section have been satisfied and that such termination is in the child's best interests. *In re Interest of Gabriel B., supra*. The State must prove these facts by clear and convincing evidence. *Id.*

Ashley concedes that § 43-292(7) has been satisfied, and we agree. Section 43-292(7) allows for termination when the juvenile has been in an out-of-home placement for 15 or more months of the most recent 22 months. This subsection operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of the parent. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). In other words, if the 15-out-of-22 formula is met, § 43-292(7) is met. *In re Interest of Mateo L. et al., supra.* The existence of the statutory basis alleged under § 43-292(7) should be determined as of the date the petition or motion to terminate is filed. *In re Interest of Jessalina M.*, 315 Neb. 535, 997 N.W.2d 778 (2023).

Here, Olivia and Sofia were removed from Ashley's care on October 14, 2021. They were returned to Ashley's home on March 1, 2022, and were removed again on May 25, 2022. Since that time, the children have remained in out-of-home placement. At the time the motion to terminate was filed on May 31, 2023, Olivia and Sofia had been in out-of-home placement for over 16 months of the most recent 22 months. Thus, the State presented sufficient evidence to satisfy § 43-292(7).

Having found sufficient evidence for termination under § 43-292(7), we need not consider the sufficiency of the evidence concerning the other statutory bases for termination. See *In re Interest of Mateo L. et al., supra* (where one statutory base has been established, appellate court need not consider sufficiency of evidence concerning other statutory bases for termination).

*Best Interests.*

Ashley assigns that the juvenile court erred in finding that she was unfit and that termination was in Olivia and Sofia's best interests and, therefore, erred in terminating her parental rights.

In addition to providing a statutory ground, the State must show that termination of parental rights is in the best interests of the child. *In re Interest of Gabriel B.*, 31 Neb. App. 21, 976 N.W.2d 206 (2022). A parent's right to raise his or her child is constitutionally protected; so before a court may terminate parental rights, the State must show that the parent is unfit. *Id.* There is a rebuttable presumption that the best interests of the child are served by having a relationship with his or her parent. *Id.* Based on the idea that fit parents act in the best interests of their children, this presumption is overcome only when the State has proved that the parent is unfit. *Id.*

Although the term "unfitness" is not expressly stated in § 43-292, we have said that it derives from the fault and neglect subsections of that statute and from an assessment of the child's

best interests. *In re Interest of Mateo L. et al., supra.* In this context, parental unfitness means a personal deficiency or incapacity that has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing that has caused, or probably will result in, detriment to a child's well-being. *Id*. The best interests and parental fitness analyses require separate, fact-intensive inquiries, but each examines essentially the same underlying facts. *Id.*

The evidence presented shows that Ashley has failed to work with the girls' therapists in parent only sessions. She failed to participate in individual therapy. She started a parenting course multiple times and claims to have completed it but has provided no proof of completion. In the summer of 2022, she stopped participating in services because she had an outstanding warrant and did not want to be arrested. After she turned herself in, she still chose not to cooperate with the services offered. She has not completed any of the case plan goals and has made little progress. She has not taken responsibility for the reasons the girls were removed from her home.

Ashley has not had parenting time with Olivia and Sofia since February 2022. The only exception was a brief visit set up by DHHS in January or February 2023 when Ashley came to court for a hearing. Ashley was denied parenting time because she did not follow through with therapy requirements necessary to restart visits. In December 2022, she made the voluntary decision to move out of state, despite being told that such a move would make it difficult to reunify with Olivia and Sofia.

Olivia and Sofia both experienced trauma in Ashley's home and as a result, both were experiencing mental health issues and trauma-related symptoms. Since being removed from the home, they have both shown great improvement in their behavior and the problems they were having when first removed from the home. Their behavior at school had improved and they were excelling academically. When they were returned to Ashley's home temporarily, they regressed in the progress they had made in therapy.

Olivia and Sofia were removed from Ashley's home on October 14, 2021. They have been in foster care for nearly 2½ years. During that time, Ashley has been consistently offered various services to rehabilitate herself and reunify with Olivia and Sofia. She has either failed, refused, or was unwilling to participate in or complete these services and her case plan goals. She was given a chance to prove her commitment to reunifying with Olivia and Sofia when they were placed back in her home in March 2022, but she failed to work with the in-home services that were offered. Throughout the case, Ashley has failed to consistently comply with services and has made little progress and, therefore, has failed to rehabilitate herself.

Nebraska courts have recognized that children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity. *In re Interest of Brooklyn T. & Charlotte T.*, 26 Neb. App. 669, 922 N.W.2d 240 (2018). Where a parent is unable or unwilling to rehabilitate himself or herself within a reasonable time, the best interests of the child require termination of the parental rights. *Id.* Ashley has had well over 2 years to rehabilitate herself and has failed to do so. On the contrary, Olivia and Sofia have made great progress in therapy and in their out-of-home placement. Both girls' therapists testified that they would likely regress in their functioning if placed back in Ashley's home. As Olivia's therapist testified, it is difficult for any child to maintain progress when the parent has not made "shifts in their own habituated patterns." Both girls need and deserve permanency in their lives.

Based on our review of the record, we conclude the State proved by clear and convincing evidence that Ashley is unfit and that termination is in Olivia and Sofia's best interests. Ashley's assignments of error fail.

CONCLUSION

We conclude there was sufficient evidence to support terminating Ashley's parental rights to Olivia and Sofia. Accordingly, the orders of termination are affirmed.

AFFIRMED.