Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
03/19/2024 08:06 AM CDT

In re Interest of Harley S., a child
under 18 years of age.
State of Nebraska, appellee, v.
Sherrie S., appellant.

___ N.W.3d ___

Filed March 19, 2024.    No. A-23-594.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Judgments: Statutes: Appeal and Error.** When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below.
3. **Juvenile Courts: Parental Rights: Proof.** In order to demonstrate that a preadjudication detention should continue, the State must prove by a preponderance of the evidence that the custody of a juvenile should remain in the care of the Department of Health and Human Services pending adjudication.
4. **Juvenile Courts: Parental Rights.** The issue of whether reasonable efforts were made to reunite the family must be reviewed by the juvenile court in situations including when the court continues a juvenile's out-of-home placement pending adjudication pursuant to Neb. Rev. Stat. § 43-254 (Cum. Supp. 2022).

Appeal from the County Court for Madison County: Ross A. Stoffer, Judge. Reversed and remanded with directions.

Joel E. Carlson, of Stratton, DeLay, Doele, Carlson, Buettner & Stover, P.C., L.L.O., for appellant.

Nathan T. Eckstrom, Deputy Madison County Attorney, for appellee.

- 708 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

Jeffrey L. Hrouda, guardian ad litem.

Riedmann, Arterburn, and Welch, Judges.

Welch, Judge.

## I. INTRODUCTION

Sherrie S., biological mother of Harley S., appeals from the order of the Madison County Court, sitting in its capacity as a juvenile court, finding that legal custody of Harley should be continued with the Nebraska Department of Health and Human Services (DHHS) and that Harley should remain in out-of-home placement to exclude Sherrie's home. For the reasons set forth herein, we reverse, and remand with directions.

## II. STATEMENT OF FACTS

### 1. Background

Sherrie is the mother of Harley, who was born in June 2023. Harley is the subject of this appeal. Sherrie is also the mother of four other children. Sherrie has relinquished her parental rights to her two oldest children. Sherrie's other two children, 6-year-old Justyce S. and 1-year-old Valkyrie H., were removed from Sherrie's care in February 2023 due to concerns of neglect. They tested positive for methamphetamine shortly after being placed in foster care and remain in the legal custody of DHHS. Although Sherrie attempted to evade testing by cutting her hair, samples from her fingernails and toenails tested positive for methamphetamine. Of the 13 visits that were scheduled with the children, 8 were canceled due to positive drug tests and 1 was canceled due to illness.

In late March 2023, Sherrie entered residential treatment at the "Mommy and Me" program run by Women's Empowering Life Line (WELL). The Mommy and Me program offers dual diagnosis treatment for substance abuse and mental health and is designed for women to keep their children with them during their stay. Sherrie was still participating in the Mommy and Me program when she gave birth to Harley in June 2023.

- 709 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

## 2. Juvenile Petition and
### Order for Removal

The day after Harley's birth, while she was still in the hospital, the State filed a juvenile petition alleging that Harley was a juvenile under the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) due to a lack of proper parental care by reason of the fault or habits of Sherrie. Specifically, the petition alleged, inter alia, that Sherrie

• has a history of using drugs;
• "has a history of romantic relationships with men who have a history of violent, felonious, and criminal behavior and substance misuse";
• failed to protect two of Harley's siblings from witnessing domestic abuse committed against her;
• filed for two protection orders against her abuser, who was the father of at least one of her children, but promptly dropped the first request, and shortly after the second request, she asked to modify her request to allow telephone contact and stated that she only filed the request "'because DHHS told me I have to or I will lose my kids'";
• continues to have a relationship with her abuser;
• relinquished her parental rights to her two oldest children in 2017; and
• admitted that Harley's siblings Justyce and Valkyrie were children within the meaning of § 43-247(3)(a), that Sherrie and the children tested positive for methamphetamine, that the children remain in the legal custody of DHHS and in out-of-home placement, and that DHHS "continues to recommend only supervised visitation at this time based on [Sherrie's] limited progress, even though [Sherrie] is in residential substance abuse treatment in a program that does have accommodations for children when appropriate."

Also on June 23, 2023, the State filed a motion for a temporary custody order, which was granted by the court on June 26. The order provided that Harley was to be taken into emergency custody by law enforcement and placed with DHHS

- 710 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

because Harley was less than 1 month old; Sherrie has been in relationships with violent men, including Harley's putative father, who is currently incarcerated; and that Sherrie has indicated a desire to resume living with the putative father after he is released from incarceration. The court further found that "the foregoing facts constituted an emergency, which threatened the safety of [Harley]," and

> the following efforts, which were reasonable and active under the circumstances, have been attempted to prevent removal of [Harley], but removal was necessary for [Harley's] safety: [Sherrie] has had other cases where services were provided which were unsuccessful and where [Sherrie] relinquished her parental rights. [Sherrie] has current active cases where services are being provided.

(Emphasis omitted.) The court ordered that all visitation be fully supervised; that Sherrie not use or possess controlled substances without a prescription; that Sherrie submit to random urinalysis at least two times per week; and that if Sherrie possessed an illegal controlled substance, had a positive test for an illegal controlled substance, willfully failed to appear for a drug test, or willfully failed to provide a sample for drug testing in the 7 days before a visit, that visit shall not occur. This order resulted in Harley's removal from Sherrie's care prior to being released from the hospital.

### 3. Sherrie's Objection to Removal and Hearing

On June 27, 2023, Sherrie filed an objection to the removal of Harley from her physical custody as being contrary to Harley's best interests. The combined hearing on the State's motion for temporary placement and Sherrie's objections thereto was held on July 6. At the combined hearing, testimony was adduced from two witnesses: Sherrie and Lynnette Otero, a child and family services specialist with DHHS. Evidence adduced included an affidavit from Jessica Parr, the

- 711 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

residential program director for WELL; an affidavit from Seth Rivest, a counselor at WELL; and the September 2016 and May 2023 psychological evaluations of Sherrie conducted by Mark P. Hannappel, Ph.D.

(a) Psychological Evaluation

Hannappel conducted psychological evaluations of Sherrie in September 2016 and May 2023. The May 2023 evaluation was conducted prior to Harley's birth and was part of an overall process to determine whether Sherrie could be an adequate parent to Justyce and Valkyrie. The 2023 evaluation noted that

> Sherrie had a psychological evaluation in 2016 when [DHHS] had custody of two older children. In [the 2016] evaluation, she was diagnosed with many conditions, but the overall arching determination stated that Sherrie is lower functioning and has no long term potential to improve her ability to become an adequate parent. Sherrie "has limited insight into her problems with adult functioning including her ability to parent the children." At that time, Sherrie was pregnant with Justyce and went through . . . counseling and parenting classes.

The 2023 evaluation noted that issues present during the earlier 2016 evaluation were also present in the current case and that even though DHHS implemented intensive family preservation, Sherrie made minimal progress.

Hannappel explained that parenting inventories suggested that Sherrie's responses "were in the medium to high-risk range across categories of parenting techniques with various aged children" and that she "has significant unrealistic expectations about developmental capabilities." The evaluation stated that Sherrie

• lacks an understanding of normal child growth and development, as well as a basic understanding of normal developmental needs;

• has problems handling the stress of parenting;

- 712 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

• has limited levels of empathy for her children;
• has a limited capacity to nurture her children;
• has a limited ability to develop healthy and age-appropriate parenting strategies to manage her children's behavior, due to limitations in her intellectual abilities and growing up in a dysfunctional childhood environment; and
• lacks insight into her limited knowledge about parenting and appears to have a limited interest in learning about childhood development and healthy parenting.

Additionally, Sherrie's "responses suggest a significant likelihood that she will use the children to meet her needs as opposed to her meeting the needs of the children."

The 2023 evaluation stated that Sherrie's intellectual abilities appeared to be in the borderline to low average range and that Sherrie has poor insight "in terms of understanding abilities, limits, and potential risks factors posed to her children" and her "[c]urrent and historical judgment has been fair to poor, especially related to choices about intimate partners and taking care of the basic to complex needs of the children." The 2023 evaluation further stated that

> [t]he persistent and ongoing nature of her psychological and interpersonal problems continues to indicate that she will have significant difficulty altering those thinking and behavioral patterns in a manner that will allow her to be an adequate parent to her children. This was also the case for her two older children. It appears the pattern has repeated with her two younger children, and quite likely will occur with her unborn child.

> She has limited capability to learn basic to complex behavioral parenting strategies in terms of nurturing, rule setting[,] and limit setting that can be effective with children because of limitations in her psychological and psychiatric issues noted throughout this report. Intellectually and psychologically, she has quite limited personal resources to implement such strategies on a consistent basis. She has difficulty managing her own

- 713 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

functioning as an adult at a basic level. It would take significant effort on her part to alter thinking, emotional, and behavioral patterns that have been developing since childhood. When considering her history, it seems unlikely that she would make such changes in a period that would be in the best interest[s] of her children. Unless she demonstrates the ability to consistently manage her own adult issues and stressors, then it is not likely that she will be able to consistently provide a nurturing and structured home environment for her children. She has questionable abilities to be a good single parent because of her dysfunctional past under the best of circumstances. Her parenting abilities deteriorate when she is involved with an intimate partner that is dysfunctional. Personality testing and interview information suggested a significant lack of insight into her personality problems, how those personality problems evolved, and how she might go about altering such negative and habitual personality problems. Parenting assessment results, interview information, collateral information, and background provided by [DHHS] indicated limitations in her understanding of basic to complex parenting and child developmental issues. Such information suggested that she has unrealistic expectations about developmental capabilities of various aged children. Such individuals often have great difficulty handling parenting stresses. She will have difficulty recalling and developing alternative healthy parenting strategies that are age appropriate to manage her children's behavior, especially under stress. Since she does not typically have her adult needs met in a healthy manner, she will expect her children to meet those needs in various unhealthy ways. People who respond as she has, have poor self-esteem, poor self-awareness, and a poor social life. The personality limitations noted above will make it quite difficult for her to make long-term

- 714 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

changes that will result in her providing a healthy and structured environment for her children.

The 2023 evaluation stated that Sherrie appeared to have limited potential to improve her ability to become an adequate parent. She has made limited progress despite receiving intensive services and interventions, because she continues to have problems following through with basic expectations. Any improvements she made were short lived, with Sherrie quickly reverting to parenting her younger children in the same way that she parented her older children. This pattern "strongly suggests that she will not likely benefit from further intervention." Hannappel opined that Sherrie "will not consistently do what she needs to do for the long term to provide a healthy home for her children" and recommended that Sherrie's visitation continue to be supervised.

### (b) Otero Testimony

Otero testified that in December 2022, she became the caseworker for a noncourt-involved case involving Sherrie, Justyce, and Valkyrie. That case became court-involved in February 2023, at which time temporary custody of the children was placed with DHHS. Otero testified that even prior to Harley's birth, she had concerns about Harley's remaining with Sherrie at WELL. Those concerns included Sherrie's use of methamphetamine during her pregnancy, her lack of parenting skills, and her inability to make good decisions. Otero also expressed concerns regarding Sherrie's becoming easily overwhelmed during visits, the possibility of Harley's being exposed to illegal substances, and Justyce's severe behavioral issues and diagnosis of post-traumatic stress disorder, due to Sherrie's lack of parenting and ability to make good decisions.

Otero acknowledged that since residing at WELL, Sherrie has made improvements in that Sherrie is healthier, engages better with the children, has not had a positive drug test, and was participating in supervised visitation, but Sherrie's interactions with Otero have remained similar. And although

- 715 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

Sherrie was participating in supervised visitation, Otero did not anticipate recommending unsupervised visitation in the immediate future, due to her concerns regarding Sherrie's parenting skills, Sherrie's tendency to become overwhelmed easily, and a disparity between the amount of attention Sherrie provides to Justyce compared to Valkyrie. Otero explained that "Justyce has negative behaviors, almost dangerous behaviors in an attempt to get [Sherrie's] attention."

Otero also explained that if Harley was placed with Sherrie in the Mommy and Me program, Sherrie would not be continuously supervised. Otero also expressed concern that "Sherrie tends to worry about herself more than the children. I am concerned about her oversleeping or not hearing cries and either not hearing or choosing not to tend to the baby if she's crying." Otero explained that Sherrie overslept and was 1½ hours late to her induction for Harley's birth, Sherrie had slept through her alarm and missed transportation to her visitation, and she had been late for 7 out of 16 video calls with the children.

### (c) Affidavit of Parr

Parr's affidavit set forth that she is the residential program director for WELL. As the residential program director, Parr oversees the services provided for participants in the Mommy and Me program. She explained that the Mommy and Me program provides a safe place for children while the mother is in treatment and addresses a common barrier for women who seek and maintain recovery while caring for children on a full-time basis. The children of residents can participate in the Mommy and Me program when physical placement is with the mother, even though legal custody remains with DHHS. Parr explained that a fundamental aspect of recovery is connection and building healthy relationships.

Parr also noted that the Mommy and Me program has "a family advocate who supports the mothers in learning parenting skills, developmental milestones, disciplinary actions

- 716 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

that are age appropriate. The family advocate is here 5 days a week and a Recovery Coach is here 7 days a week. We are staffed 24/7." She further stated that the program conducts

a minimum of hourly checks of all residents during [waking] hours and checks every two hours during the night. Our facility is an apartment complex that is secure. Each mom shares an apartment with another mom. They have 1 bedroom for themselves and their children. Then they share a common space of a living room, bathroom and kitchen with the other mom.

. . . Each set of moms in each apartment cooks their own meals regularly and completes chores so they are getting practice with taking care of and managing their home. We have cameras in each apartment that are monitored by the on-site staff. [Parr] along with the Executive Director [has] access to live feeds on [their phones.] All apartment doors within the facility are required to remain open at all times.

[There are] opportunities for residents to acclimate as they move through the levels of the program. The first part of their stay is the most restrictive as they move through the levels they gain additional privileges.

WELL attempts to provide individualized programs for residents to address their individual needs while meeting program requirements. All residents are assigned a licensed clinician with whom residents meet once per week for the duration of their residential stay. Additionally, WELL offers peer support services, case management services, and health and wellness services. WELL also conducts random drug testing a minimum of two times per week. And although most mothers have their children on site, WELL makes accommodations for mothers who do not have custody of their children to have visits with them and will accommodate travel for mothers to visit children who are placed farther away.

Parr explained that the Mommy and Me program has three levels of care and that Sherrie was in the "Dual Disorder"

- 717 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

program, which is the highest level of care. The "Dual Disorder" program "offers more focus on substance use and mental health and requires that [Sherrie] participate in 42 hours of programming per week." According to Parr, when Sherrie is ready, she can be moved to the medium level of care and, if needed, could eventually be moved to the lowest level of care that would "provide her even more significant time in our program with her children."

### (d) Affidavit of Rivest

Rivest is a residential counselor for WELL, who provides counseling services for participants in the Mommy and Me program, including Sherrie. Rivest stated that prior to Sherrie's admission into the program, she demonstrated difficulties with maintaining effective parenting, due to barriers caused by her substance use, lack of positive social support, and mental health concerns, including emotional regulation, impulse control, and boundary setting.

According to Rivest, since entering the program in March 2023, Sherrie has begun addressing all of those issues. Rivest stated that Sherrie has demonstrated

- the ability to refrain from substance use, as evidenced by negative urinalysis results and her willingness to identify and implement relapse prevention strategies;
- progress in her ability to seek positive social support, as evidenced by improvement in her ability to maintain positive relationships with her peers at the treatment facility, as well as others within the local recovery community; and
- progress with her willingness to address mental health issues, including those related to emotional regulation, impulse control, and boundary setting, as evidenced by her willingness to continue process treatment work related to those areas from both "Dialectical Behavioral Therapy" and "Cognitive Behavioral Therapy" approaches.

According to Rivest, Sherrie participates in visits with her children, appears open to feedback from her DHHS

- 718 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

caseworker, actively communicates about necessary changes to improve her relationship with her caseworker, and appears motivated to sustain continued progress in her ability to function in all areas of her life more effectively.

### (e) Sherrie's Testimony

Sherrie testified that most mothers in the Mommy and Me program have their children with them and that she would like Harley to be with her too. She further stated that she has been clean and sober since beginning the Mommy and Me program in March 2023 and was willing to abide by a safety plan in order to facilitate Harley's being returned to her care. She explained that she had changed during her 3 months in the program, noting that this was her "first time in the treatment facility" and that she has learned "new coping skills and the dangers of . . . my addiction. And, honestly, I learned so much since I have got into treatment that I . . . don't want to go down that road ever."

### 4. Court Order

On July 6, 2023, the court overruled Sherrie's objection to out-of-home placement and stated that "[a]ll prior orders remain in full force and effect including placement and visitation." Sherrie has timely appealed to this court.

### III. ASSIGNMENTS OF ERROR

Sherrie has identified 11 assignments of error but argues only that the court erred in (1) failing to make certain written findings required by Neb. Rev. Stat. § 43-254 (Cum. Supp. 2022) regarding the child's health, safety, and welfare and regarding reasonable efforts to preserve and reunify the family prior to out-of-home placement and (2) continuing Harley's out-of-home placement because it was not supported by the evidence and not in Harley's best interests.

### IV. STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the

- 719 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

juvenile court's findings. *In re Interest of Jessalina M.*, 315 Neb. 535, 997 N.W.2d 778 (2023).

[2] When an appeal calls for statutory interpretation or presents questions of law, an appellate court must reach an independent, correct conclusion irrespective of the determination made by the court below. *Id.*

## V. ANALYSIS

### 1. Failure to Make Written Findings

Sherrie's first assignment of error is that the court erred in failing to make certain written findings required by § 43-254 regarding Harley's health, safety, and welfare and whether there were reasonable efforts made to preserve and reunify the family prior to out-of-home placement. She also contends that "the record and the [court's] order are devoid of any written determinations or otherwise of any reasonable efforts having been made as required by [Neb. Rev. Stat. §§] 43-284 [(Reissue 2016)] and 43-283.01 [(Cum. Supp. 2022)]." Brief for appellant at 21.

[3] In order to demonstrate that a preadjudication detention should continue, the State must prove by a preponderance of the evidence that the custody of a juvenile should remain in the care of DHHS pending adjudication. *In re Interest of Stephanie H. et al.*, 10 Neb. App. 908, 639 N.W.2d 668 (2002).

Sherrie's assignment of error focuses primarily on § 43-254, which provides:

Pending the adjudication of any case, and subject to subdivision (5) of section 43-251.01, if it appears that the need for placement or further detention exists, the juvenile may be (1) placed or detained a reasonable period of time on order of the court in the temporary custody of either the person having charge of the juvenile or some other suitable person, (2) kept in some suitable place provided by the city or county authorities, (3) placed in any proper and accredited charitable

- 720 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

institution, (4) placed in a state institution, except any adult correctional facility, when proper facilities are available and the only local facility is a city or county jail, at the expense of the committing county on a per diem basis as determined from time to time by the head of the particular institution, (5) placed in the temporary care and custody of [DHHS] when it does not appear that there is any need for secure detention, except that beginning October 1, 2013, no juvenile alleged to be a juvenile described in subdivision (1), (2), (3)(b), or (4) of section 43-247 shall be placed in the care and custody or under the supervision of [DHHS], or (6) beginning October 1, 2013, offered supervision options as determined pursuant to section 43-260.01, through the Office of Probation Administration as ordered by the court and agreed to in writing by the parties, if the juvenile is alleged to be a juvenile described in subdivision (1), (2), (3)(b), or (4) of section 43-247 and it does not appear that there is any need for secure detention. The court may assess the cost of such placement or detention in whole or in part to the parent of the juvenile as provided in section 43-290.

*If a juvenile has been removed from his or her parent, guardian, or custodian pursuant to subdivision (2) of section 43-248, the court may enter an order continuing detention or placement upon a written determination that continuation of the juvenile in his or her home would be contrary to the health, safety, or welfare of such juvenile and that reasonable efforts were made to preserve and reunify the family if required under section 43-283.01.*

(Emphasis supplied.)

The first paragraph of § 43-254 does not discuss written findings. In support of her argument, Sherrie relies upon the second paragraph of § 43-254. By its plain language, the second paragraph of § 43-254 requires written determinations

- 721 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

only when a juvenile has been removed "pursuant to subdivision (2) of section 43-248." Neb. Rev. Stat. § 43-248(2) (Cum. Supp. 2022) provides that "[a] peace officer may take a juvenile into temporary custody *without a warrant or order of the court* and proceed as provided in section 43-250 when [the] juvenile is seriously endangered in his or her surroundings and immediate removal appears to be necessary for the juvenile's protection." (Emphasis supplied.) The Nebraska Supreme Court has previously held that, by its terms, similar statutory language contained in a prior version of § 43-254 applies only when a juvenile is taken into temporary custody without a court order. *In re Interest of Joshua M. et al.*, 251 Neb. 614, 558 N.W.2d 548 (1997).

Here, Harley was not taken into temporary custody without a warrant or order; she was taken into temporary custody pursuant to the court's June 26, 2023, court order. Accordingly, we reject Sherrie's argument that the court was required to make written findings pursuant to § 43-254.

Sherrie separately claims that "the record and the [court's] order are devoid of any written determinations or otherwise of any reasonable efforts having been made as required by [§§] 43-284 and 43-283.01." Brief for appellant at 21.

The last paragraph of Neb. Rev. Stat. § 43-284 (Reissue 2016) provides:

> The court may enter a dispositional order removing a juvenile from his or her home upon a written determination that continuation in the home would be contrary to the health, safety, or welfare of such juvenile and that reasonable efforts to preserve and reunify the family have been made if required under section 43-283.01.

And Neb. Rev. Stat. § 43-283.01(2) (Cum. Supp. 2022) requires that "reasonable efforts shall be made to preserve and reunify families prior to the placement of a juvenile in foster care to prevent or eliminate the need for removing the juvenile from the juvenile's home and to make it possible for a juvenile to safely return to the juvenile's home," except

- 722 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

under certain circumstances that are not applicable to the instant case.

[4] The Nebraska Legislature codified § 43-283.01 in 1998, the year after *In re Interest of Joshua M. et al., supra*, was decided, to clarify that reasonable efforts were required by the State in all situations when a juvenile is removed from the parental home, subject only to the exceptions delineated in § 43-283.01 itself. The Nebraska Supreme Court has determined that the issue of whether reasonable efforts were made to reunite the family must be reviewed by the juvenile court in situations including when the court continues a juvenile's out-of-home placement pending adjudication pursuant to § 43-254. See, *In re Interest of DeWayne G. & Devon G.*, 263 Neb. 43, 638 N.W.2d 510 (2002); *In re Interest of Andrew M. et al.*, 11 Neb. App. 80, 643 N.W.2d 401 (2002).

Thus, reading §§ 43-283.01 and 43-284 together, in determining whether Harley's out-of-home placement should be continued, the court was required to consider whether continuation in the parental home would be contrary to the health, safety, and welfare of such juvenile; to consider whether reasonable efforts had been made to preserve and reunify the family; and to make written determinations as to those findings.

The court's July 6, 2023, order overruling Sherrie's objection to out-of-home placement did not state that continuation in the home would be contrary to Harley's health, safety, and welfare, nor did the order state that reasonable efforts had been made to preserve and reunify the family. The order did state that "[a]ll prior orders remain in full force and effect including placement and visitation." The court's June 26 ex parte order specifically provided that the facts involved in the case

> constituted an emergency, which threatened the safety of [Harley], and the following efforts, which were reasonable and active under the circumstances, have been attempted to prevent removal of [Harley,] but removal

- 723 -

Nebraska Court of Appeals Advance Sheets
32 Nebraska Appellate Reports
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

> was necessary for [Harley's] safety: [Sherrie] has had other cases where services were provided which were unsuccessful and where [Sherrie] relinquished her parental rights. [Sherrie] has current active cases where services are being provided.

(Emphasis omitted.)

Although we acknowledge that the court's July 6, 2023, order references its findings governing the ex parte hearing, the court failed to provide a written determination governing these essential issues after evidence was presented at the dispositional hearing. And even though we have previously held that a juvenile court's order that included broad language that "'the [S]tate [met its] burden with respect to [its] protective custody request' . . . sufficiently encompassed a written determination that reasonable efforts were made to preserve and reunify the family in accordance with § 43-254," the court's order in the instant case did not include broad findings, but, rather, failed to incorporate any written findings regarding the required statutory elements. See *In re Interest of Lukah C. et al.*, No. A-23-300, 2023 WL 8590735 at *6 (Neb. App. Dec. 12, 2023). We also note that the juvenile court made relevant and extensive findings of fact orally at the close of the hearing. However, those findings were not included in the court's written order. Because the court's order failed to make the findings required by §§ 43-283.01 and 43-284, we reverse the court's order and remand the cause for the court to determine whether placement of Harley in Sherrie's home would be contrary to Harley's health, safety, and welfare, and whether reasonable efforts had been made to preserve and reunify the family and, if so, to enter an order containing these required findings based upon the evidence adduced at the July 6 dispositional hearing.

### 2. Out-of-Home Placement

Having determined that the court's order was insufficient to comply with the requirement that the court make certain

- 724 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
32 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF HARLEY S.
Cite as 32 Neb. App. 707

written findings, we need not consider Sherrie's second assignment of error that the court erred in continuing Harley's out-of-home placement, because it was not supported by the evidence and not in Harley's best interests. See *Nesbitt v. Frakes*, 300 Neb. 1, 911 N.W.2d 598 (2018) (appellate court is not obligated to engage in analysis that is not necessary to adjudicate case and controversy before it).

## VI. CONCLUSION

Having determined that the court's order was insufficient to comply with the requirement that the court make written findings required by §§ 43-283.01 and 43-284, we reverse, and remand for the court to enter an order, based upon the evidence adduced at the dispositional hearing, that complies with those statutes.

REVERSED AND REMANDED WITH DIRECTIONS.