IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF AIDEN B.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF AIDEN B., A CHILD UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

MICHELLE B., APPELLANT, AND JONATHAN V., APPELLEE.

Filed March 4, 2025.   No. A-24-562.

Appeal from the Separate Juvenile Court of Douglas County: AMY N. SCHUCHMAN, Judge. Affirmed.

Kendall Krajicek, of Law Office of Kendall K. Krajicek, for appellant.

Daniel R. Gubler, Deputy Douglas County Attorney, and Makayla Pardun, Senior Certified Law Student, for appellee State of Nebraska.

RIEDMANN, Chief Judge, and BISHOP and ARTERBURN, Judges.

RIEDMANN, Chief Judge.

## INTRODUCTION

A mother appeals the order of the juvenile court continuing the out-of-home placement of her minor child. She argues the court erred in its determination that she posed a risk to the minor child, the minor child's best interests required continued detention out of the family home, and reasonable efforts to prevent the minor child's removal had been provided. For the reasons stated herein, we reject her arguments and affirm the juvenile court's order.

## BACKGROUND

Michelle B. is the biological mother of Aiden B., born in 2024. A few days after Aiden's birth, the State filed a petition in the separate juvenile court of Douglas County, alleging that Aiden

- 1 -

was a child within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2024), because he lacked proper parental care by reason of the fault or habits of Michelle. The petition cited a May 24, 2022, termination of Michelle's parental rights to Aiden's siblings. It also alleged that Michelle was in a relationship with Jonathan V., who was prohibited from being unsupervised with any child, and that Michelle had failed to demonstrate she understands the risks of allowing contact between Jonathan and Aiden or that she would adequately protect Aiden from such risks.

The State also filed an ex-parte motion for immediate custody pending further hearing regarding the petition. In support of its ex-parte motion, the State submitted an affidavit of Brittney Taylor, a Child and Family Services specialist employed by the Nebraska Department of Health and Human Services (DHHS), who conducted an initial interview with Michelle following Aiden's birth.

Taylor's affidavit revealed the following. DHHS had previously investigated nine intakes concerning abuse or neglect of minor children by Michelle, one of which was substantiated following the imposition of a safety plan regarding another intake. Michelle's other children had been removed from her custody, and her parental rights were ultimately terminated despite numerous services being implemented to reunite her with the children.

According to the affidavit, during the initial interview, Taylor became aware of Michelle's plans to return to work. When Taylor asked who Michelle intended to care for Aiden while she was working, Michelle responded that Jonathan's mother would watch him. However, Michelle was unable to provide an address for Jonathan's mother.

The affidavit further revealed that DHHS had concerns pertaining to Jonathan's criminal background. Jonathan is a registered sex offender and DHHS had previously investigated two intakes concerning allegations he was abusing or neglecting minor children. One intake was found to be substantiated; the findings of the other were unknown.

Taylor further attested that Jonathan was on probation at the time of Aiden's birth. Per the stipulations of Jonathan's probation, he was not permitted to have unsupervised contact with minor children who had not been approved by probation officers. Prior to Aiden's birth, a safety plan had been created which provided Jonathan was not to have unsupervised contact with Aiden and could not change his diapers or bathe him. Michelle agreed to uphold the terms of the safety plan but Taylor sensed that Michelle lacked understanding of it. Taylor was unable to obtain information regarding Michelle's ability to prohibit Jonathan from having unsupervised contact with Aiden. Rather, the affidavit stated that Michelle called Jonathan and he instructed her to end the interview. When Taylor explained the interview needed to be private, Michelle asked Taylor to leave and refused to continue the interview, stating that Jonathan had a right to be present because he is Aiden's father.

The affidavit stated that Taylor spoke with the ongoing DHHS case manager for Michelle's other three children, who advised that the concerns pertaining to Aiden were in line with Michelle's history and the repeated patterns of Child Protective Services' (CPS) intakes. She also reported that Jonathan was a sex offender, and that Michelle has a history of not being protective.

Ultimately, the affidavit relayed Taylor's concerns for Aiden's care due to the history of termination of Michelle's parental rights, lack of participation in rehabilitative services, willingness to work with Taylor, and the ongoing probation status of Jonathan. Therefore, Taylor

opined that Aiden was at risk of further maltreatment due to concerns of ongoing supervision and a safe living environment.

The juvenile court issued an ex parte order for immediate custody, placed temporary custody of Aiden with DHHS, and ordered out-of-home placement. It reasoned, based upon the affidavit, that Aiden was seriously endangered and his continuation in Michelle's home would be contrary to his health, safety, or welfare; immediate removal appeared to be necessary for his protection due to Michelle's inability to safely parent; and reasonable efforts had been made to prevent Aiden's removal. Aiden was then removed from Michelle's care and placed with Jonathan's mother.

The juvenile court held a protective custody hearing and Michelle entered a first appearance regarding the petition. At the hearing, Taylor testified that DHHS had received an intake shortly following Aiden's birth that alleged Michelle had a history of supervision issues, that had resulted in her previous children being removed from her care, and that she had just given birth to another child whose father was a registered sex offender.

Michelle was currently on the child abuse and neglect registry and her parental rights had been terminated in 2022 as to three of Aiden's siblings. Taylor testified there was a history of domestic violence between Michelle and a previous partner, which had led to physical neglect of the three children and an intake for physical abuse. However, the main allegation was that Michelle had failed to provide proper supervision for the children.

In the prior termination case, Michelle had been provided various services including an initial diagnostic interview, psychological evaluation, competency evaluation, agency surprise visits, parenting assessment, a peer mentor, and therapy; none of which were successful in reunifying Michelle with the three children. Taylor testified, in a case such as the one at hand, it would be typical to ask parents whose parental rights have been previously terminated what services they have been involved in since their rights were terminated, but she did not have that conversation with Michelle. Taylor did, however, ask Michelle whether she was involved in therapy or any mental health treatment, which Michelle reported she was not.

During Taylor's interaction with Michelle following Aiden's birth, Taylor became concerned because, despite the main allegation against Michelle in the previous case, Michelle informed Taylor she did not have an issue with supervision for the children prior to their removal. Taylor was also concerned because the hospital nurse claimed Michelle had informed medical staff the three children still lived with her even though the children had been removed from Michelle's custody in 2018, 6 years prior.

Notably, throughout its investigation, DHHS' main concerns were the lack of appropriate supervision of Aiden and Jonathan being allowed around Aiden unsupervised. During Taylor's initial interview, she was unable to get a clear answer regarding who would supervise Aiden when Michelle returned to work. When Taylor continued to ask, Michelle eventually stated that Jonathan's mother would be a "possible" day care option. However, when asked for the mother's address, last name, where she lived, and whether she lived with Jonathan, Michelle stated she did not know.

DHHS was concerned about Jonathan being around Aiden unsupervised because of Jonathan's criminal history. At the time of the hearing, Jonathan was on probation for a state conviction related to sexual abuse of a child and was also on parole following a period of

incarceration for a federal conviction of sexual assault to include pornography. Per the terms of his probation, Jonathan was not allowed to be around minor children while unsupervised. Taylor testified that there were at least four allegations that Jonathan sexually assaulted minor children.

A safety plan was created by Jonathan's probation and parole officers, which prohibited Jonathan from being around Aiden unsupervised and from being present during baths and diaper changes. Both Michelle and Jonathan agreed to the plan. When Taylor had asked Michelle about Jonathan's criminal history, Michelle stated she was aware of his background and had agreed to supervise him while in Aiden's presence. However, Michelle told Taylor there was only one victim and the charge had been "taken care of," which indicated to Taylor that Michelle was unaware of the extent of Jonathan's criminal history.

Ultimately, Taylor testified she believed Aiden was at risk of harm because of Michelle's history with CPS, the lack of supervision she provided for her previous children, and the risk she would not follow through on supervising Jonathan because she did not previously adequately supervise her other children.

Following the hearing, the court ordered Aiden remain in the temporary care and custody of DHHS and be placed outside of Michelle's home until further order of the court. The order also contained provisions allowing for agency supervised visitation between Michelle and Aiden in her home, as long as no other adult was present, and ordering various services. The court also scheduled a further hearing regarding the petition. Michelle now appeals the court's decision to continue Aiden's out-of-home placement pending adjudication.

ASSIGNMENTS OF ERROR

Michelle assigns as error, restated, that the juvenile court erred in finding (1) it was contrary to Aiden's health and safety to be remain in her custody, (2) it was in Aiden's best interests to remain in DHHS temporary custody, and (3) reasonable efforts were made to prevent removal from the home.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. *In re Interest of Harley S.*, 32 Neb. App. 707, 4 N.W.3d 886 (2024).

ANALYSIS

Continued detention pending adjudication is not permitted under the Nebraska Juvenile Code unless the State can establish by a preponderance of the evidence at an adversarial hearing that such detention is necessary for the welfare of the juvenile. *In re Interest of Damien S.*, 19 Neb. App. 917, 815 N.W.2d 648 (2012). A detention hearing is a parent's opportunity to be heard on the need for removal and the satisfaction of the State's obligations. *Id*.

In determining whether Aiden's out-of-home placement should be continued, the juvenile court was required to consider whether continuation in the parental home would be contrary to the health, safety, and welfare of such juvenile; consider whether reasonable efforts were required, and if so, if they had been made to preserve the family and prevent out-of-home placement; and make written determinations as to those findings. See, *In re Interest of Harley S., supra*; Neb. Rev.

Stat. § 43-283.01 (Cum. Supp. 2022). The juvenile court's order stated that "due to exigent circumstances, it would be contrary to the health and safety of the minor child to be returned home at this time" and that "reasonable efforts have been made to eliminate or prevent removal of the minor child from the parental home" and then set forth what those efforts were. Michelle challenges those findings on appeal.

HEALTH AND SAFETY OF AIDEN

As stated above, the juvenile court made an express finding that it would be contrary to the health and safety of the minor child to be returned home at this time. Michelle argues that under the parental preference doctrine, unless the State affirmatively shows a parent is unfit, a parent must be presumptively regarded as the proper guardian for the child. To the extent she contends the State was required to show she was unfit, we disagree. Continued detention is not conditioned upon a showing of a parent's unfitness; rather, it is based upon whether continuation in the parental home would be contrary to the health, safety, and welfare of such juvenile and whether reasonable efforts, if required, had been made to preserve the family and prevent out-of-home placement.

If evidence of the fault or habits of a parent or custodian indicates a risk of harm to a child, the juvenile court may properly take jurisdiction of that child, even though the child has not yet been harmed or abused. See *In re Interest of Jeremy U. et al.*, 304 Neb. 734, 936 N.W.2d 733 (2020). While the State need not prove that the child has actually suffered physical harm, Nebraska case law is clear that at a minimum, the State must establish that without intervention, there is a definite risk of future harm. *Id*.

Here, the juvenile court's written order stated Aiden was at risk for harm and it was in his best interests to remain in DHHS custody because of the contents of Taylor's affidavit, the fact Michelle's parental rights had been terminated as to her other children, and, due to exigent circumstances, it would be contrary to Aiden's health and safety to be returned to Michelle's custody. Although Aiden was removed from Michelle's custody while still in the hospital, and there was no proof that Michelle had abused or harmed Aiden, we find the preponderance of the evidence supports a conclusion that continuing Michelle's custody of Aiden posed a definite risk of future harm.

At the hearing, evidence was introduced regarding Michelle's history of DHHS involvement, including the 2018 removal of three other children from her home for issues related to neglect and lack of supervision. Taylor testified that Michelle had failed to participate in the services required to reunify with her other three children, ultimately resulting in the termination of her parental rights in 2022. Although Michelle argues details of the prior removal and termination were lacking, it was appropriate for the juvenile court to consider that after 4 years of continued services, Michelle was unable to place herself in a position to parent her children and her rights were terminated.

Also, Taylor's affidavit and testimony indicated that Michelle had informed hospital staff, after Aiden's birth, that she lived with the three other children, even though the children had been removed in 2018 and therefore had not been in her custody for over 6 years at the time of Aiden's birth. Moreover, Taylor stated Michelle had informed her that she did not have issues supervising the other three children while they were in her care, despite the fact that lack of supervision was the main reason for the children's removal. We agree with the State this evidence indicates

Michelle lacked insight that leaves Aiden vulnerable to the same issues which caused the removal of Michelle's other children.

Taylor further informed the court that, given Michelle's history of lack of supervision, Taylor's main concern was that Michelle would allow Aiden to be around Jonathan, unsupervised by another adult. This was cause for concern because Jonathan had previous convictions related to child sexual assault and child pornography and was currently restricted from being alone with minor children, per the terms of the safety plan created by his parole and probation officers.

When Taylor contacted Michelle regarding plans for ensuring adequate supervision of Aiden, Michelle reported that Jonathan's mother would assist with supervising Aiden while she was working. However, she could not provide his mother's last name or address. When Taylor asked further questions, Michelle called Jonathan on the phone. Michelle ultimately told Taylor to leave the hospital and refused to continue the interview privately, saying Jonathan had a right, as Aiden's father, to be present in the conversation. As the State argues, based on this evidence, "[i]t is clear that [Michelle] [does] not possess the insight necessary to keep Aiden safe. [She] [is] more concerned with involving [Jonathan] than protecting Aiden." Brief for appellee at 22.

The evidence presented by the State indicates Michelle does not appreciate the risks posed by Jonathan, as she did not report anything that would indicate she had taken measures to ensure that Jonathan would not have unsupervised contact with Aiden while she was at work. Rather, Michelle could not provide contact information for the only person she identified as a possible caretaker for Aiden, and she refused to speak further about supervision plans with Taylor outside of Jonathan's presence. Moreover, Michelle has a history of not providing appropriate supervision for her children, and her statements to Taylor indicate she lacks insight as the consequences of this. We agree this evidence creates "concern that [Michelle] would not adequately protect Aiden." Brief for appellee at 23.

Michelle also assigns error to the juvenile court's determination that it was in Aiden's best interests to remain in out-of-home care. She argues that a child's best interests are presumed to be served by having a relationship with his or her parent and this presumption can only be overcome by proof that the parent is unfit. We recognize that the juvenile court used the term "best interests" when addressing the need for Aiden to remain in out-of-home placement; however, as stated previously, out-of-home placement can be continued when it would be contrary to the health and safety of the minor child to be returned home and reasonable efforts, if required, have been made to eliminate or prevent removal of the minor child from the parental home. Given the context in which this term was used, we interpret the juvenile court's statement that it would be in Aiden's best interests to remain in out-of-home care based on the termination of Michelle's parental rights to her other children as a determination that it would be contrary to his health and safety, a finding with which we agree.

REASONABLE EFFORTS TO PREVENT REMOVAL

Michelle assigns that the juvenile court erred in finding reasonable efforts were made to prevent Aiden's removal. She argues the State failed to show reasonable efforts had been made in the present case, and also failed to show by clear and convincing evidence that her parental rights had previously been terminated which would alleviate this requirement. We reject this assignment of error.

Pursuant § 43-283.01(4)(c) reasonable efforts to preserve and reunify the family are not required to be made if a court of competent jurisdiction has determined that the parental rights of the parent have been involuntarily terminated to a sibling of the juvenile. Because dispensing with reasonable efforts at reunification frequently amounts to a substantial step toward termination of parental rights, the requisite standard of proof for such determination is the level required for a termination of parental rights; therefore, the determination to excuse reasonable efforts at reunification under § 43-283.01(4) must be supported by clear and convincing evidence. See *In re Interest of Jac'Quez N.*, 266 Neb. 782, 669 N.W.2d 429 (2003). Thus, here the State had the burden to show by clear and convincing evidence that prior involuntary termination of Michelle's parental rights to Aiden's sibling had occurred in order to alleviate the reasonable efforts requirement. See *id*.

At the hearing, Taylor testified Michelle had three other children removed from her care because she failed to provide them with adequate supervision, and further stated Michelle had been offered, and failed to comply with, various services, and eventually had her parental rights terminated as to the three children. She further testified that Michelle appealed that decision, and it was affirmed. No other witnesses testified, and no evidence was introduced which contradicted Taylor's statements.

Upon our de novo review, we find that the uncontroverted evidence showed Michelle previously had her parental rights terminated as to Aiden's three siblings. Thus, the State was not required to show reasonable efforts had been made to prevent Aiden's removal. See *In re Interest of Damien S.*, 19 Neb. App. 917, 815 N.W.2d 648 (2012) (uncontradicted evidence that parental rights have been previously terminated satisfies burden of proof for purposes of § 43-283.01(4)).

## CONCLUSION

For the foregoing reasons, we reject Michelle's assignments of error and affirm the juvenile court's order continuing Aiden's out-of-home placement pending adjudication.

AFFIRMED.