IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**
**(Memorandum Web Opinion)**

IN RE INTEREST OF PHOENIX B. ET AL.

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

IN RE INTEREST OF PHOENIX B. ET AL., CHILDREN UNDER 18 YEARS OF AGE.

STATE OF NEBRASKA, APPELLEE,

V.

ANGELINA P., APPELLANT.

Filed April 14, 2026.    Nos. A-25-540 through A-25-542.

Appeals from the County Court for Scotts Bluff County: JAMES M. WORDEN, Judge. Affirmed.

Rhonda R. Flower, of the Law Office of Rhonda R. Flower, for appellant.

No appearance for appellee.

RIEDMANN, Chief Judge, and BISHOP and WELCH, Judges.

BISHOP, Judge.

## INTRODUCTION

Angelina P. appeals from the decisions of the county court for Scotts Bluff County, sitting as a juvenile court, terminating her parental rights to her three children, Arianna B., Amari B., and Phoenix B. We affirm.

## BACKGROUND

### PROCEDURAL BACKGROUND

Angelina is the biological mother of Arianna, born in March 2017; Amari, born in September 2018; and Phoenix, born in November 2022. Quentin B. is the children's father. Quentin's parental rights to the children were terminated during these same juvenile proceedings below. Because Quentin is not part of this appeal, he will only be discussed as necessary.

- 1 -

On August 23, 2023, the State filed separately docketed juvenile petitions alleging that Arianna, Amari, and Phoenix were children within the meaning of Neb. Rev. Stat. § 43-247(3)(a) (Reissue 2016) because they were in a situation dangerous to life or limb or injurious to their health or morals in that:

a.) [The juveniles'] mother and father engage in domestic violence, placing the juvenile[s] at risk of harm and/or depriving the juvenile[s] of necessary parental care;

b.) [The juveniles] lack[] safe and stable housing;

c.) [The juveniles'] mother and father fail to provide the juvenile[s] with necessary parental care or protection;

d.) Prior [Department of Health and Human Services] interventions have not corrected the situation.

The State also filed a motion for temporary custody of the children to be placed with the Nebraska Department of Health and Human Services (DHHS), and the juvenile court entered an order that same day. The children have since remained in the custody of DHHS and in a relative/kinship placement.

On October 4, 2023, Arianna, Amari, and Phoenix were adjudicated to be children within the meaning of § 43-247(3)(a) based on Angelina's admission to the allegations in paragraph "a" above; the State dismissed the remaining allegations.

Following a disposition hearing on November 6, 2023, the juvenile court adopted the DHHS case plan and ordered all parties to comply with the terms of the plan, including any court ordered amendments; that DHHS case plan does not appear in our record. The court also ordered "child parent psychotherapy," and Angelina was "allowed unsupervised visitation during the holidays as long as Quentin . . . [was] in jail." Following subsequent review hearings, the juvenile court continued to adopt DHHS' case plans and ordered all parties to comply with the terms of the plans. (The only case plan appearing in our record is from October 2024. It was offered into evidence at the termination hearing and will be discussed in that portion of the opinion.) Pursuant to the court's order on October 23, 2024, Angelina was to undergo random drug testing once per week prior to visitation.

On January 7, 2025, the State filed motions to terminate Angelina's parental rights to Arianna, Amari, and Phoenix pursuant to Neb. Rev. Stat. § 43-292(2), (4), (6), and (7) (Reissue 2016). The State alleged that Angelina had substantially and continuously or repeatedly neglected and refused to give the children, or a sibling of the children, necessary parental care and protection; Angelina was unfit by reason of debauchery, habitual use of intoxicating liquor or narcotic drugs, or repeated lewd and lascivious behavior, which conduct was seriously detrimental to the health, morals, or well-being of the children; reasonable efforts to preserve and reunify the family failed to correct the conditions leading to the adjudication of the children under § 43-247(3)(a); the children had been in an out-of-home placement for 15 or more months of the most recent 22 months; and termination of Angelina's parental rights was in the children's best interests.

On February 18, 2025, Angelina filed a motion for a relinquishment hearing, informing the juvenile court that she intended to relinquish her parental rights. However, she subsequently withdrew her motion on February 25.

The parental rights termination hearing was held on May 5, 2025. The State called several witnesses to testify, and exhibits were received into evidence. Angelina testified, and she called her older brother to testify on her behalf.

Karissa Harvey, a child and family services specialist, testified that she was assigned as the case worker for Arianna, Amari, and Phoenix in September 2023, and she was the ongoing caseworker at the time of the termination hearing. According to Harvey, this was the family's third legal case. She said this was Arianna's third removal, Amari's second removal, and Phoenix's first removal. (Angelina testified that this was Arianna's third "DHHS case," but only her second removal.)

Katelyn Templeton, a child and family services specialist, testified that she was the case worker for Arianna and Amari in a previous case from May 2022 until the case closed on February 1, 2023. In that previous case, Arianna and Amari were removed from their home in January 2021 because of domestic violence between Angelina and Quentin, and because drugs and stolen guns were found in the home.

In January 2021, Angelina was charged with distribution of a controlled substance (marijuana), possession of a controlled substance (marijuana, more than one pound), possession of a stolen firearm, possession of drug paraphernalia, and two counts of negligent child abuse. Pursuant to a plea agreement, Angelina pled no contest to possession of a controlled substance (marijuana, more than one pound), a Class IV felony, and the remaining counts were dismissed. In May 2021, she was sentenced to 1 year of probation.

Templeton testified that in the previous juvenile case, Arianna and Amari were adjudicated to be children within the meaning of § 43-247(3)(a), and various services were provided to Angelina (family team meetings, intensive family reunification, "Circle of Security" parenting class, a "PALS worker," and visitation that transitioned from supervised to unsupervised and overnights). For the respective services, Angelina "worked the bare minimum just to get by," meaning that "[s]he was cooperative . . . to the point where she would just meet with them, but following up and doing things that were asked she wouldn't do." Upon further questioning, Templeton stated that Angelina did not follow through on therapy, but she did participate in "Women's Trauma" and drug testing through probation in her criminal case. Arianna and Amari were reunified with Angelina in March 2022, while Quentin remained in jail until May. That juvenile case closed on February 1, 2023. Phoenix was born "right before the case closed." According to Templeton, "Angelina knows that she's a good mother" and "[s]he takes good care of her girls" "when she's by herself," "[b]ut when you add Quentin, they become a problem together."

Caseworker Harvey testified about an August 2023 motor vehicle accident the family was involved in that led to criminal charges against both Angelina and Quentin. Quentin was driving and hit a motorcyclist, resulting in that person's death. Quentin fled the scene. Angelina moved into the driver's seat and attempted to take the blame for the accident. The children were in the vehicle at the time. During her forensic interview, Arianna told the interviewer that she was not supposed to say that her dad was driving.

In November 2023, Angelina was charged with leaving the scene of a serious injury or death accident, and false reporting in a criminal matter. She pled no contest to leaving the scene of a serious injury or death accident, a Class III felony, and the other charge was dismissed. In June 2024, she was sentenced to 9 months' probation. In a March 2025 order, the district court found that Angelina had "unsatisfactorily completed the conditions of her probation," but it discharged her from probation.

Harvey testified that in the current juvenile case, the children were removed from the parental home on August 23, 2023. She stated that DHHS had received an intake on July 31 with allegations of physical neglect and concerns of ongoing domestic violence between Angelina and Quentin. Angelina was not very cooperative and denied the allegations. According to Harvey, a forensic interview was completed at the Child Advocacy Center on August 23, which occurred after the motor vehicle accident mentioned above. During the interview, the children disclosed allegations of ongoing domestic violence. Adjudication occurred on October 4, and disposition occurred on November 6.

During her testimony, Harvey confirmed that the case plan goal for Angelina never changed throughout this case. Angelina's October 17, 2024, case plan identified a goal and strategies for Angelina, as well as services. The goal was for Angelina to provide a safe and stable home for herself and the children and demonstrate that she was able to meet the children's basic needs. She also was to identify red flags in relationships that could potentially be harmful to her and her children. The identified strategies for that goal were for Angelina to ensure that there were no controlled substances in the home that could cause any harm to the children; identify and address the unhealthy aspects of her relationship with Quentin in order to provide a safer environment for her and her children; use her support system to ensure that her children were in a safe environment; identify red flags for when a person was unsafe to be in her home and make a plan for what to do when that happens; seek employment to provide for herself and her children; participate in a parenting evaluation; and complete a mental health evaluation and follow all recommendations. Although the case plan goal remained the same throughout this case, Harvey testified that the original permanency goal of reunification changed to add a concurrent goal of adoption in January 2025, which was also when the motion to terminate Angelina's parental rights was filed.

Harvey testified that Angelina had previously completed a co-occurring evaluation (substance abuse and mental health) in December 2022. Because "that assessment was completed so close in time with this current case, we used those recommendations off of that evaluation." Angelina was diagnosed with "major depressive disorder; cannabis use disorder, severe, but in full sustained remission," and the recommendations were for mental health therapy and community support. Although it took Angelina "some time to come around to participating in individual therapy," she did complete an intake in January 2024 and started individual therapy in February. That provider thought medication might be helpful for Angelina, but Angelina did not want to take any medication. She ceased therapy with that provider in "approximately April" and sought a different provider. She then started seeing someone "at the Cirrus House" in July 2024. However, since Angelina had been participating in child-parent psychotherapy with Lori Rodriguez-Fletcher since January, she felt it made more sense to see Rodriguez-Fletcher for individual therapy, too. Angelina transitioned to individual therapy with Rodriguez-Fletcher in August. Harvey stated that

Angelina was discharged by Rodriguez-Fletcher in February 2025 due to her inconsistency with attending her individual therapy sessions.

According to Harvey, Angelina's alcohol use was a concern in this case. In prior cases, there were concerns about marijuana, but at the time of this case, Angelina was in full remission for her diagnosed cannabis use disorder. The co-occurring evaluation completed in December 2022 did not make any recommendations for alcohol treatment. However, Angelina had also completed a parental capacity evaluation in June 2022, "which was also used for this current case as well since it was within a year," and that evaluation recommended that Angelina participate in a 12-step program and random drug testing, including for alcohol. Harvey stated that "there were conversations" between DHHS and Angelina about a 12-step program, but "Angelina did not feel like it was a current issue for her, and so she did not participate in that" and it was not a part of her case plan.

A "therapeutic recommendation" was made in early 2024 "for Angelina to complete sweat patch and UAs that test specifically for alcohol," according to Harvey. Angelina did complete drug testing via a "sweat patch" in this case and had "all negative results." She was ordered to do UA's approximately three times a week, but "[t]hey were very inconsistent with her completing those UAs." Angelina tested positive for alcohol on several occasions throughout the case and she also had several refusals. She would state that she knew she would test positive for alcohol, so "she didn't want to complete the UAs." In February 2025, all testing stopped due to Angelina stating that she wanted to relinquish her rights to her children and did not want to continue with services.

Angelina had a family support worker who helped her find different community resources and helped her fill out housing vouchers. A community support worker also helped Angelina find employment, housing, and community resources to assist her with furnishing her apartment and paying her rent.

Although Angelina was employed "the majority of the case," she had "eight to nine different employments" from August 2023 through March 2025. According to Harvey, Angelina's longest employment at a single location was approximately 4 months.

Angelina had several different residences throughout this case, and her housing situation was not safe. Harvey testified that it "was not considered safe due to the fact that Quentin . . . would frequent her residence" when he was not incarcerated. Angelina was evicted from one residence in January 2024, "due to multiple reports of law enforcement contacting her residence"; "[t]here were several disturbances and reports of parties occurring there." One of the disturbances was related to Quentin's presence "when he was found at her residence and arrested in October of 2023." At the time of the termination hearing, Angelina was living in South Dakota with her biological father and brother. That concerned Harvey because when Angelina was a child "[s]he was a state ward where her biological parents' rights were terminated due to concerns of domestic violence."

Harvey stated that "Women's Trauma," conversations during home visits, and individual therapy were used to assist Angelina to be able to identify red flags in relationships. But even after completing "Women's Trauma" in April 2024, Angelina still was not able to identify the red flags and "understand the impact to her children and how that caused them to be unsafe." When asked if it was fair to say that Angelina was not able and/or willing to implement the lessons learned through the class that she completed, Harvey responded, "That's correct." That was important "due

to the overall concerns of why we were involved with the case, with the history of DV, previous cases." There were ongoing conversations with Angelina during her monthly home visits about her history with Quentin, the circumstances that led to the current case, and the impact on her and the children. According to Harvey, Angelina "did not seem to understand what the impacts on the children were" and "believed that where the domestic violence was not always directed towards the children, it was between her and Quentin, this would mean that her children were safe." Harvey explained to Angelina that it was harmful to the children to witness domestic violence.

As for being able to meet the children's basic needs, Harvey testified that Angelina "did do well at providing her children meals and ensuring that their hygiene needs were met" during visits. Angelina initially began with supervised visits for 30 hours each week, and the visits took place in her home. After a therapeutic recommendation from Rodriguez-Fletcher, visits were reduced to 15 hours each week beginning in October 2023. In approximately March 2024, visits were moved to a visitation center because Angelina was staying with her grandmother and there were ongoing concerns of visits occurring at that home due to the inability to control the people who were in and out of the home and conflicts that had been occurring within that home. Angelina was arrested for an altercation with another female who resided in the home. In approximately November or December, visits returned to Angelina's home after she secured housing.

Regarding the quality of the visits, one of the concerns was that Angelina would request to end visits early if the girls stated that they wanted to go back to their foster home. Additionally, Angelina was "very disengaged" with Arianna and Amari, and she focused most of her attention on Phoenix. There were instances where the girls would act out, trying to get Angelina's attention. Angelina "did improve in some areas with that during [child-parent psychotherapy]," but after the motion to terminate her parental rights was filed, she "became more disengaged." The motion to terminate Angelina's parental rights was filed in January 2025. Her last visit with the children was on February 21. According to Harvey, "Angelina decided to end all visits due to wanting to relinquish her rights."

Crystal P. has been the children's foster mother since August 2023. Crystal testified that Angelina is her husband's niece. They adopted Angelina through foster care in 2014 when she was 14 or 15 years old. Crystal had not had a relationship with Angelina since she left her home the day she graduated from high school. Angelina had already had Arianna by that time.

Crystal confirmed that Arianna, Amari, and Phoenix had not seen Angelina since February 21, 2025. Crystal stated that "[t]he stability in their moods . . . [was] a lot better now that they do not have to, I guess, transition from visits to home." When asked if Arianna or Amari ever talked about Angelina, Crystal responded, "No." Crystal saw Angelina and Quentin out in public together "[m]ore than once," but she did not know an exact date. On one occasion, Crystal and the children were in her car when they saw Angelina and Quentin buying ice cream at a window; the children were worried that Angelina was going to get hurt again.

Rodriguez-Fletcher is a licensed independent mental health practitioner and a certified master-level social worker. She also has various certificates, including one for child-parent psychotherapy. Rodriguez-Fletcher completed trauma assessments for Arianna and Amari in August 2023, and she completed an early childhood assessment for Phoenix in September.

Rodriguez-Fletcher eventually diagnosed Arianna with posttraumatic stress disorder. She "was having a lot of hypervigilance," "dissociation at times," and "bad dreams and nightmares,"

and she was "very parentified at the beginning," meaning that she would "take care of her siblings a lot." Arianna was experiencing "a lot of stress and trauma related to the car accident that had happened." "She also identified Mom and Dad fighting, Dad drinking, Mom drinking, and then fighting." "She has identified things in the house getting broken" and "mean people com[ing] to the house." "She did identify that she knew her mom had stabbed her dad," "[s]he saw blood and the knife, and they were fighting and chasing each other with a knife, those types of things." Arianna "loved her mom" and worried about her, but "she would often say when we would talk about safety that she didn't always feel safe with her mom."

Rodriguez-Fletcher eventually diagnosed Amari with posttraumatic stress disorder and "parent-child relational problem." She "had a lot of hypervigilance," anxiety, and "some acting-out behavior." "She would also talk about the fighting" between her parents and "feeling scared."

Rodriguez-Fletcher started individual therapy with Arianna and Amari in January 2024 "to address the trauma," "promote healing," and "improve family relationships." They also did family therapy with Angelina, and Phoenix became part of those sessions as well. Angelina's last session with Rodriguez-Fletcher and the children was on January 22, 2025. There was supposed to be a session on February 5, but Angelina canceled that session. Shortly after that, Angelina indicated that she was going to relinquish her parental rights. She had stopped all services and was "just going to do kind of a final goodbye visit with the family support worker." After visits with Angelina stopped, Rodriguez-Fletcher noticed that Arianna and Amari both had calmer demeanors and less anxiety. Rodriguez-Fletcher testified that all three children were doing "very well right now," and were "completely different kids" from when she first saw them.

Rodriguez-Fletcher testified that she started doing individual therapy with Angelina on August 30, 2024, and diagnosed her with "major depressive disorder, recurrent episode, moderate, PTSD, unspecified personality disorder, and rule out alcohol use disorder." She observed that "Angelina has . . . gone through a lot in her life, and she really needs to work on her own individual needs"; "I don't think she can ever take care of the children or anybody else if she doesn't first take care of herself and heal and address the hard things in her life." There were times when Rodriguez-Fletcher thought Angelina was progressing, but she was not able to sustain or maintain that progress. Their last individual session was on December 18 because Angelina canceled or "no-showed" all of her sessions in January 2025 and her session on February 5. When Rodriguez-Fletcher reached out to Angelina on February 5, Angelina "said that she [did not] see the point of any of this, that we are going to terminate her rights and that she was kind of done doing things for everybody and was just kind of done with it all." It was Rodriguez-Fletcher's opinion that Angelina needed to work "really hard on managing her mental health, addressing her own trauma and attachment needs." She thought Angelina had "great potential," but would need some "long-term therapy," a "really good support system," and would have to "really look at relationships and who she needs to probably cut out of her life."

Harvey testified that DHHS' position was that Angelina's parental rights should be terminated due to the history and ongoing concerns of domestic violence. Angelina had not shown that she could refrain from having a relationship with Quentin. She was unwilling to fully address her trauma and acknowledge how her relationship with Quentin had affected their children. She lacked understanding as to how alcohol was always an underlying factor in her altercations with Quentin. Additionally, the children had been out of home for approximately 20 months, "and that's

just with this case alone." Angelina had not participated in any services, including visitations, since February 2025, and she moved to South Dakota in March.

On cross-examination, Harvey confirmed that in her January 2025 court report and case plan she indicated that Angelina had made positive progress, understood the importance of individual therapy and had attended all scheduled therapy appointments since the previous review hearing, progressed in communicating and bonding with her children, and had been more engaged in visits since November 2024. However, in that report, DHHS still recommended the State move to terminate Angelina's parental rights "due to the sustainability." "[J]ust as quickly as she was able to make that progress, she declined just . . . as fast if not quicker than how long it took her to even show some progress was being made."

Harvey described Angelina's communication with her as "fairly consistent" but also "very resistant." Angelina was "very defensive." She felt like she was "attacked by the professionals on her case," so she had a "hard time having an open mind to receiving the feedback." Since January 2025, Angelina's communication had been "very inconsistent" and "very hostile." After the motion to terminate was filed, "she was very angry and believed everyone was out to get her and we were not there to help her." In February, Angelina stated that she wanted to relinquish her parental rights. However, she later said "she felt like we wanted her to give up on her children and that she didn't want to do that," and she was worried "how that would look or reflect back on her." She inquired about resuming her visits with the children. It was discussed with Angelina that she could resume those visitations, but that she needed to understand how that would emotionally impact her children. They already had "their goodbye visit, had their closure, and had been making good progress." Also, visitation would need to be in a therapeutic setting to help the children "cope with seeing [her] again."

At the time of the termination hearing, the children had been out of Angelina's home for the previous 20 months, but Angelina believed that it was in the children's best interests to be returned to her. She said, "I don't see why everyone expects me to just be a complete wreck . . . the rest of my life," "[p]eople do change." When the State noted that she had 20 months to make changes, she responded, "And I have done that now."

Angelina stated that she completed Circle of Security "three times," participated in Women's Trauma "twice, maybe three times," worked with a PALS worker, and "got [a] place" and a vehicle. Angelina said that she "struggled, but definitely . . . always had employment." However, she then agreed that there were times she went without employment, noting that she had "two felonies on [her] background, so it's kind of hard to get employment." According to Angelina, she successfully completed all the requirements of her probation during the pendency of this case. She also participated in "[m]ost" of the monthly team meetings. When asked why she missed some of the meetings, she responded that the case "wasn't going in any direction," and if she was "not moving anywhere," she did not "feel like doing anything." She had previous cases opened with DHHS, but "this one in particular," she was "kind of just . . . stuck in one spot" which "kind of just made [her] lose . . . focus." Angelina "tried [her] best" to attend visitation with her children. When asked why she missed visits, she responded, "Same thing," the "[c]ase wasn't moving." "I did everything that was asked of me, and I never took a step forward," "[v]isitation never expanded" and "I lost hours." When asked if she voluntarily stopped having visits in February 2025, Angelina responded, "Yes," "[b]ecause I was told that they were no longer going to be in

my home, which I have earned that right to have them in my home," "[a]nd they were going to be moved to the visitation center." As for her lack of engagement in therapy, Angelina stated, "I did open up, and I did build a relationship with [Rodriguez-Fletcher], but, you know, obviously, the case hasn't progressed and, and it's kind of just put me down," "[a]nd I didn't want to really do anything anymore at that point because I wasn't moving anywhere." At the time of the termination hearing, Angelina was not in therapy.

Angelina testified that she was currently living with her father in South Dakota. She confirmed that her father's parental rights to her had been terminated, but she stated that her father had changed and he was "great." Angelina moved to South Dakota because she wanted to "turn [her] whole life around." When asked to describe her relationship with her children, Angelina responded, "I think my relationship with them is pretty -- pretty great . . . up until they were removed from my home," and "I guess things just kind of went down from there." Angelina did not believe it was in her children's best interests to terminate her parental rights. She stated, "I mean, like everyone has stated, I do have potential." "I am 25 years old," "I really don't expect that everyone in the courtroom . . . makes it seem like I am going to, you know, be just a bum the rest of my life." When asked if she felt that she was in a position to parent all three of her children by herself, Angelina responded, "As of today, yes." "I am doing great. I am successful."

Angelina's older brother testified that he observed Angelina with her children before their removal from her home. Angelina was a "good" mother and "always put her kids first." He also observed Angelina during some of her visits with her children after removal; the children "were happy" to see Angelina and she was "happy" to see them as well.

JUVENILE COURT'S DECISION

In the July 15, 2025, order terminating Angelina's parental rights to Arianna, Amari, and Phoenix, the juvenile court found that statutory grounds existed pursuant to § 43-292(7), and that termination of Angelina's parental rights was in the children's best interests.

Angelina appeals.

ASSIGNMENT OF ERROR

Angelina assigns that the juvenile court erred in finding that termination of her parental rights due to her unfitness was in the children's best interests.

STANDARD OF REVIEW

An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the findings made by the juvenile court below. *In re Interest of Mateo L. et al.*, 309 Neb. 565, 961 N.W.2d 516 (2021). However, when the evidence is in conflict, an appellate court may consider and give weight to the fact that the juvenile court observed the witnesses and accepted one version of the facts over another. *Id.*

ANALYSIS

Angelina contends that the juvenile court erred in finding that the termination of her parental rights was in her children's best interests. She does not challenge the court's finding of a statutory ground for termination of her parental rights to the children; however, for the sake of completeness, we briefly review the court's finding.

STATUTORY GROUNDS FOR TERMINATION

The State sought to terminate Angelina's parental rights to the children under § 43-292(2), (4), (6), and (7). The juvenile court found, by clear and convincing evidence, that statutory grounds existed pursuant to § 43-292(7).

Section 43-292(7) allows for termination when "[t]he juvenile has been in an out-of-home placement for fifteen or more months of the most recent twenty-two months." The existence of the statutory basis alleged under § 43-292(7) should be determined as of the date the petition or motion to terminate is filed. *In re Interest of Jessalina M.*, 315 Neb. 535, 997 N.W.2d 778 (2023). By the plain and ordinary meaning of the language in § 43-292(7), there are no exceptions to the condition of 15 out of 22 months' out-of-home placement. *In re Interest of Mateo L. et al., supra.* Section 43-292(7) operates mechanically and, unlike the other subsections of the statute, does not require the State to adduce evidence of any specific fault on the part of a parent. *In re Interest of Mateo L. et al., supra.* In other words, if the 15-out-of-22 months' period is met, § 43-292(7) is met. *See In re Interest of Mateo L. et al., supra.*

Arianna, Amari, and Phoenix were removed from Angelina's custody on August 23, 2023, and they remained in foster care thereafter. By the time the motion to terminate Angelina's parental rights was filed on January 7, 2025, the children had been in an out-of-home placement for 16 months, thus the 15-out-of-22 months' period was clearly satisfied for them.

We next consider whether termination is in the children's best interests.

BEST INTERESTS AND UNFITNESS

Under § 43-292, in addition to proving a statutory ground, the State must show that termination is in the best interests of the child. *In re Interest of Noah C.*, 306 Neb. 359, 945 N.W.2d 143 (2020). A child's best interests are presumed to be served by having a relationship with his or her parent. *In re Interest of Leyton C. & Landyn C.*, 307 Neb. 529, 949 N.W.2d 773 (2020). This presumption is overcome only when the State has proved that the parent is unfit. *Id.* Although the term "unfitness" is not expressly stated in § 43-292, the Nebraska Supreme Court has said that it derives from the fault and neglect subsections of that statute and from an assessment of the child's best interests. *In re Interest of Mateo L. et al., supra.* In the context of the constitutionally protected relationship between a parent and a child, parental unfitness means a personal deficiency or incapacity which has prevented, or will probably prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to a child's well-being. *In re Interest of Leyton C. & Landyn C., supra.* The best interests analysis and the parental fitness analysis are separate inquiries, but each examines essentially the same underlying facts as the other. *Id.* We have previously set forth the evidence presented at the termination hearing, and we will not recount it again here.

Notably, this is not the first DHHS and court-involved case for this family, nor is it the first time Arianna and Amari were removed from Angelina's home. As noted by the juvenile court in its order of termination, "The previous case involved nearly identical issues to the case at hand." Numerous services were provided to Angelina in the previous case as well as the current case. In the current case, Angelina repeatedly tested positive for alcohol or was noncompliant with testing, failed to maintain safe and stable housing, could not understand how her relationship with Quentin affected her children, and voluntarily discontinued therapy and visitation with her children.

- 10 -

Although there were times when Angelina made progress in this case, she failed to sustain that progress. At the time of the termination hearing in May 2025, Angelina had not participated in any services since February, and she had moved to South Dakota in March.

By the time of the termination hearing, Arianna, Amari, and Phoenix had been in an out-of-home placement for 20 months. Caseworker Harvey testified that DHHS believed Angelina's parental rights should be terminated. We agree. "Children cannot, and should not, be suspended in foster care or be made to await uncertain parental maturity." *In re Interest of Walter W.*, 274 Neb. 859, 872, 744 N.W.2d 55, 65 (2008). And when a parent is unable or unwilling to rehabilitate himself or herself within a reasonable period of time, the child's best interests require termination of parental rights. *In re Interest of Leyton C. & Landyn C., supra*. The State proved that Angelina was unfit, meaning that she has a personal deficiency or incapacity which has prevented, or will prevent, performance of a reasonable parental obligation in child rearing and which has caused, or probably will result in, detriment to the children's well-being. See *id.* We further find that there is clear and convincing evidence that it is in the children's best interests to terminate Angelina's parental rights.

## CONCLUSION

For the foregoing reasons, we affirm the order of the juvenile court terminating Angelina's parental rights to Arianna, Amari, and Phoenix.

AFFIRMED.